## LYNDE v. THE COUNTY.

1. The submission to the voters of a county, under the Code of Iowa, of the question "whether the county judge at the time of levying the annual taxes shall levy a special tax of a specified number of mills on a dollar of valuation, for the purpose of constructing a court-house in the county; the tax to be levied from year to year until a sufficient amount is raised for said purpose, not to exceed" &c., is (by implication) a submission of the question whether money shall be *borrowed* to build the court-house, and negotiable bonds be sold as the means of borrowing; this, though the same section of the code enacts that the county judge may submit to the voters the question "whether money may be borrowed to aid in the

---

* State v. Peck, 53 Maine, 284; State v. Pepper, 31 Indiana, 76; Millett v. Parker, 2 Metcalfe (Ky.), 608.

erection of public buildings;" and though the question submitted to the voters as above mentioned be submitted only in virtue of an enactment immediately following, that "when the question so submitted involves the expenditure of money, the proposition of the question must be accompanied by a provision to levy a tax for the payment thereof in addition to the usual taxes." This, at least as respects the holders, *bonâ fide* and for value, of bonds so issued, when the bonds declare on their face that "all of said bonds are issued in accordance with a vote of the people of said county."

2  The county judge being, by the Code of Iowa, the officer designated to decide whether the voters have given the required sanction to the borrowing of money and issuing of bonds, his execution and issue of bonds setting forth on their face that "all of said bonds are issued in accordance with a vote of the people of said county," and that "the people have voted the levying of sufficient taxes," &c., is conclusive evidence against the county of the popular sanction so far as respects holders *bonâ fide* and for value.

3. A power given to issue county bonds carries with it a power to make them payable beyond the limits of the county for which they are issued, as also beyond the limits of the State in which the county is, and to sell them beyond such limits.

4. It carries with it, also, a right to cancel bonds previously given to a contractor with the county, but not yet put by him on the market, and to issue to him new ones in a different form.

5. Under the Code of Iowa, which enacts that in case of the "absence" of the county judge the county clerk shall supply his place, the said judge is not, when, owing to his absence from the State, the county clerk is acting as county judge in the county—holding a term of the county court there, issuing county warrants, and doing other business, in the county, in discharge of his duties as acting county judge—so wholly superseded in his office as that he may not, when beyond the limits of the county, do certain ministerial acts, as *ex. gr.*, execute and issue bonds, whose purpose is to advance the concerns of the county; and for that purpose buy, at the place where he is, a new county seal; the Code having authorized the county judge to procure one.

ERROR to the Circuit Court for the District of Iowa; the case being thus:

The Code of Iowa of 1851, section 98, thus enacts:

"Each county now or hereafter organized is a body corporate for civil and political purposes only; and as such may sue and be sued; shall keep a seal such as provided by law; may acquire and hold property and make all contracts necessary or expedient for the management, control, and improvement of the same, and for the better exercise of its civil and political powers

may take any order for the disposition of its property; and may do such other acts, and exercise such other powers, as may be allowed by law."

By section 106 the county judge is made—

" The accounting officer, and general agent of the county, and as such is authorized and required . . . to take the management of all county business; . . . to audit all claims for money against the county; to draw and seal with the county seal all warrants on the treasurer for money to be paid out of the county treasury; . . . to superintend the fiscal concerns of the county, and secure their management in the best manner."

By section 129 the county judge as a county court has power— ·

" To provide for the erection and reparation of court-houses, jails, and other necessary buildings within and for the use of the county."

By sections 114–116 it is enacted that— · ·

" The county judge may submit to the people of his county at any regular election, or at a special one called for that purpose, the question *whether money may be borrowed to aid in the erection of public buildings.*

" When the question so submitted involves the borrowing or the expenditure of money, the proposition of the question must be accompanied by a provision to levy a tax for the payment thereof, in addition to the usual taxes. No vote adopting the question. proposed, will be of effect unless it adopt the tax also."

Section 119 proceeds:

" The county judge on being satisfied that the above requirements have been substantially complied with, and that a majority of the votes cast are in favor of the proposition submitted, *shall cause the proposition and result of the vote.* to be entered at large on the minute-book; and a notice of its adoption to be published for the same time and in the same manner as is above provided for publishing the preliminary notice; *and from the time of entering the result of the vote in relation to borrowing or expending money, . . . the vote and the entry thereof on the county records shall have the force and effect of an act of the General Assembly.*"

Section 94 enacts that—

" The county judge of each county having a seal is required to obtain, as soon as practicable, for his county, a new seal of the same size with the present one, and with the same device, but the inscription on which shall be 'seal of the county of —— Iowa' (naming the county), in capital letters; and each new seal hereafter obtained, shall be of the same description," &c.

Section 111 enacts that—

" In case of a vacancy in the office of county judge, and in the case of the absence inability, or interest of that officer, the prosecuting attorney of the county shall supply his place, . . . and when the prosecuting attorney cannot act the county clerk shall fill the place of the judge."

The office of " prosecuting attorney of the county " was afterwards abolished.

These provisions of the Code being in force, Robert Clark, the county judge of Winnebago, submitted to the voters of that county, at a special election held on the 6th day of March, 1860, the question of levying a tax of seven mills on the dollar, for the purpose of building a court-house; the said tax to be levied annually, not exceeding ten years, until a sufficient amount was raised for the said purpose. The whole number of votes at the election was twenty-nine, of which twenty-four were in favor of the proposition.

No proposition was ever submitted to the voters to borrow money or to issue bonds for that or any other purpose.

The county judge then made a contract with one Martin Bumgardner to build a court-house for the county, and on account of the contract, made and delivered to him, on the 9th day of March, 1860, bonds in the name of the county for $20,000, the amount for which the court-house was to be built.

Afterwards he went to New York with Bumgardner, and professing to act as county judge of the county, made and issued to Bumgardner new bonds for $20,000, which new bonds differed in the amount of each, in time of payment, and in the amount of coupons, and in other particulars; and

he had a seal made at New York, which he called the seal of the county. He then and there signed the said bonds and affixed the said seal to them, and delivered them to Bumgardner.*

The bonds thus issued, and which by their terms were payable to Martin Bumgardner or bearer, contained this recitation on their face:

"All of said bonds are issued in accordance with a vote of the people of said county, and in pursuance of an order of the county court of Winnebago County, legally entered of record in the office of the county judge, on the 9th day of March, A.D. 1860, in fulfilment of a contract entered into with said Martin Bum-gardner, for the erection of a court-house for said county of Winnebago. And the people of said county have voted the levying of sufficient taxes, from year to year, to pay the principal and interest of each and all of said bonds as the same mature and become payable."

And they ended with a teste thus:

"In witness whereof I, Robert Clark, county judge of said county, have hereto set my hand and affixed seal of the said county, the 9th day of March, A.D. 1860.

                                     "Robert Clark,
        [SEAL.]                          County Judge."

The old bonds were now, in accordance with a proposition made by Clark when the new ones were spoken of, delivered up to Clark at New York, and were afterwards cancelled.

While Clark was in New York, making and delivering the new bonds, the clerk of the District Court of Winnebago

---

* The finding of facts by the court below did not state any reason for the cancellation of the old bonds and the issue of new ones, nor any history of the new seal bought in New York. The bill of exceptions, however, stated that the *defendant* (the county) offered to show that Clark, "finding that the original bonds could not.be negotiated," had other bonds printed, purchased a seal, &c.; "that the seal thus obtained in New York was brought back to Winnebago County, and was by Bumgardner sold to the county for $4, and had ever since been used as the county seal" The plaintiff objected to all such testimony as irrelevant; but the court admitted it.—Rep.

was acting as county judge in said county, and held a term of a county court, and issued county warrants, and did other business in discharge of his duties as acting county judge.

The new bonds coming into the possession of one Lynde, who purchased them for value, without notice of any defence to them, he dying left them by his last will to his son; and neither principal nor interest of the bonds being paid, the son sued the county on them in the court below,

The facts being found by the court essentially as above stated, the court gave judgment on them for the county. To this judgment the plaintiff excepted.

*Mr. H. D. Bean, for the plaintiff in error ; Mr. T. F. Witherow, contra.*

Mr. Justice SWAYNE delivered the opinion of the court.

The case involves the validity of certain bonds issued by the judge of the county of Winnebago. Such cases have been numerous in this court. The one before us, though new in some of its aspects, presents no point which has not been substantially determined in preceding cases. The parties waived a jury, and the court, according to the provisions of the statute upon the subject, found the facts. The findings are set forth in the record. The proposition for us to decide is, whether the facts found warrant the judgment given.

The Code of Iowa of 1851[*] authorizes the county judge, sitting as the County Court, "to provide for the erection and reparation of court-houses, jails, and other necessary buildings within and for the use of the county."

In Iowa every county is a body corporate.[†]

In *Clapp* v. *The County of Cedar*[‡] it was said by the Supreme Court of the State that the office of county judge being created and his powers and duties defined by statute, the principles of the law of agency, where those powers and duties are drawn in question, have no application; that "he

---

[*] Chapter 15, § 129, p. 26.     [†] Idem, chapter 14, § 93, p. 19.

[‡] 5th Iowa, 15.

is the living representative and embodiment of the county,"
and that " his acts are the acts of the corporation." In *Hull
& Argalls* v. *The County of Marshall*\* it was held that, by vir-
tue of his general authority, he might contract for the build-
ing of a court-house, to be paid for out of the revenue of the
county, but that when a debt was to be incurred for that
purpose special authority must be conferred by a popular
vote in the manner provided by the statute. It was further
held that where a loan was thus authorized, the form of the
securities not being prescribed, negotiable bonds might be
issued.

The statute provides that the judge may submit to the
people, at a regular or special election, " the question
whether money may be borrowed to aid in the erection of
public buildings," and other questions not necessary to be
mentioned; and that " when the question so submitted in-
volves the borrowing or expenditure of money" it " must
be accompanied by a provision to lay a tax for the payment
thereof," and that " no vote adopting the question proposed
will be of effect unless it adopt the tax also."†

Upon looking into the record in this case we find that the
question submitted to the voters was, " whether the county
judge, at the time of levying the taxes for the year 1860,
should levy a special tax of seven mills on a dollar of valua-
tion, for the purpose of constructing a court-house in said
county, and said tax to be levied from year to year until a
sufficient amount is raised for said purpose, not, however,
to exceed ten years." There was the requisite majority in
favor of the proposition. It was expressed in this formula
that a court-house was to be built, and we think it was im-
plied that money was to be borrowed to accomplish that ob-
ject. Otherwise the vote gave no authority which did not
already exist, and was an idle ceremony. The statute au-
thorized an appeal to the voters only that they might give
or refuse authority to incur a debt. It could not have been
intended that the erection should be delayed until a sum

---

\* 12 Iowa, 142.          † Code of 1851, chapter 15, §§ 114–116, pp. 23, 24.

sufficient to pay for the structure had been realized from the tax authorized to be imposed, or that the work should proceed only *pari passu* with the progress of its collection from year to year. What is implied is as effectual as what is expressed.* Viewing the subject in the light of the statutory provisions and of the action of the people, we cannot say that the bonds were issued without due authorization.

But, if the authority were doubtful, there are other facts bearing upon this point which, in our judgment, are conclusive. The county judge is the officer designated by the statute to decide whether the voters have given the required sanction. He executed and issued the bonds, and the requisite popular sanction is set forth upon their face. It is a settled rule of law that, where a particular functionary is clothed with the duty of deciding such a question, his decision, in the absence of fraud or collusion, is final. It is not open for examination, and neither party can go behind it. Here the bonds are in the hands of a *bonâ fide*-purchaser, and under the circumstances he was not bound to look beyond the averment on their face.

It is not a valid objection that the bonds were made payable and were sold beyond the limits of the county of Winnebago and of the State of Iowa. The power to issue them carried with it authority to the county judge as to both these things—to do what he deemed best for the interests of the county for which he was acting.

These points have been so frequently ruled in this way that it is needless to cite authorities to support them.

It was competent for the county judge to visit New York for purposes connected with the proper disposal of the bonds. A statute of the State authorized him to procure a seal, and prescribed certain regulations to which all such seals should conform. While there, he might well take up bonds which had been previously issued, but not put on the market, and give others in their place, affixing to them a seal there procured for that purpose. There is nothing in the statutes of

---

* United States *v.* Babbit, 1 Black, 55.

Iowa forbidding either, and we are aware of no principle of general jurisprudence which was violated by such a proceed· ing.   Certainly the county could sustain no injury by the change, and it has therefore no right to complain.   At most there was only an irregular execution of a power of the existence of which we entertain no doubt.   Admitting an irregularity to have occurred it certainly cannot affect the rights of a holder for value without notice.

It is insisted that the county judge was *functus officio* at the time he issued the bonds in question, and that they are for this reason void.

The statute of the State provides that, in case of the *absence* of that officer, the county clerk shall fill his place. The absence spoken of is doubtless absence from the county seat.   In that event unlimited authority is given to the clerk to act as his substitute.   But it is not declared that the judge shall be regarded as out of office while absent, or that he shall do no official act during that period.   Judicial power is necessarily local in its nature, and its exercise to be valid must be local also.   But it is otherwise as to many ministerial acts, and different considerations apply where they are drawn in question.   It does not appear that there was any conflict between what the judge did abroad and what the clerk did at home.   All the judge did was purely ministerial in its character, and we see no sufficient reason for holding that to this extent he did not bring with him his official character and exercise his official authority.   He did not for the time being wholly abdicate his office.   Certain powers with which it was clothed fell into abeyance, and continued in that state until his absence ceased.   The authority to do all that he did in New York touching the bonds, we hold not to have been in this category.*

JUDGMENT REVERSED, and the cause remanded with directions to enter a

JUDGMENT FOR THE PLAINTIFF IN ERROR.

* Galveston Railroad *v.* Cowdrey, 11 Wallace, 459.

Mr. Justice FIELD (with whose views and dissent concurred the CHIEF JUSTICE and Mr. Justice MILLER), dissenting.

I am compelled to dissent from the judgment of the majority of the court in this case, upon the following grounds:

1st. The county judge had no power to issue bonds binding upon the county, without previous authority conferred by a vote of the people. Such is the construction given to the statutes of Iowa, which are supposed to confer such power, by the Supreme Court of that State, and that construction is obligatory upon us. Here the only question ever submitted to the voters of the county was whether a tax of seven mills on the dollar should be levied for the purpose of building a court-house; and the only power conferred was to levy such a tax. I cannot find in this vote any authority in the county judge to issue bonds of the county for constructing a court-house, payable at different periods, and then to take up the bonds by issuing new bonds drawing a larger interest than the first, and differing in amount and time of payment, and providing that a failure to pay the interest as it matures shall cause the entire principal to become due.

2d. As the bonds were issued without the authorization of a vote of the people, the county is not estopped to deny their validity by reason of any recitals they contain. The county judge was only an agent of the county, acting under a special and limited authority, the exercise of which was supposed to be carefully guarded, and he could not enlarge that authority by any representation that he possessed what was never conferred. The statutes of the State never intended to make the liabilities of its counties dependent upon the mere statements of any of its officers. The law of agency is not different when applied to the acts of agents of municipal bodies, in a matter so serious and delicate as the contracting of a public debt, and when applied to the acts of agents of private individuals. They must both keep strictly within the limits of their power of attorney or their acts will be invalid. They cannot cure any inherent defect

in their action arising from want of power by any extent of recitals that they had the requisite authority. With great deference to the opinions of my associates, this seems to me to be a legal truism.

3d. When the bonds in suit were executed and issued the county judge was in the city of New York, and by express provision of the statutes of Iowa his authority and functions ceased when he was without the State. At the time he put his signature to these instruments another person was acting as judge in his place and was invested with his authority, and as such officer issued county warrants, held a term of the County Court, and discharged other duties devolved by law upon the county judge.

It seems to me that the ruling of the majority of the court in this case, holding that the bonds, issued under circumstances attending the issue of these, are valid obligations, binding upon the county, goes further than any previous adjudication towards breaking down the barriers which State legislatures have erected against the creation of debts, and consequent increase of taxation, by careless, ignorant, or unscrupulous public officers.