Mr. Justice Mao Arthur,
after reciting the facts, delivered the opinion of the court.
The doctrine has been very carefully stated in repeated decisions, that a corporation can only exercise such powers as are conferred upon it by its charter, and that its acts and contracts outside of this limitation are. illegal and void. This proposition was dwelt upon in argument, and is so well established that it is no longer necessary to cite the authorities upon the point. This ruling does not, however, dispose of this case, for the question here is to be determined upon the state of the pleadings.
The charter of the Hew York company is not before the court, nor is it- made an exhibit to the bill, and there is no proof upon the subject as to whether it could loan money upon bond or mortgage, or on a note secured by trust deed upon real estate. The bill alleges that it had no such power, but this is denied positively in the answer on information and belief. It is said that a denial in this form is an admission of the averment in the bill. In general, if a fact is charged which is in the defendant’s own knowledge, as if it were an act done by himself, he must answer positively, and not to his information or belief. But as to facts which have not happened within his own knowledge, he is only called upon to answer as to his information and belief. We cannot see that the defendant had necessarily any special means of knowledge as to the contents and provisions of the act of the New York legislature organizing the New York company. The defendant, therefore, states it upon information and belief as any resident or citizen in the District of Columbia might who is not supposed to know the laws of a foreign corporation. The denial is responsive to the bill, and is not only sufficient to raise an issue, but it has the effect of testimony for the defendant until overcome by other proof.
The Inland and Seaboard Coasting Company was incorporated by act of Congress, and the bill alleges that it had no power or authority to receive or accept a transfer of the note and trust deed, and that ’ question is referred in the *9 answer to the judgment of the court upon the construction of the statute. It was not produced or read upon the hearing. By reference to the statute, vol. 18, page 513, wre ascertain that the business of this corporation was the transportation of passengers and freight between the cities of Washington, Georgetown, Alexandria and New York, and it was also authorized to purchase, hold and convey such real estate as may be necessary to carry into effect the purposes of its charter, and to purchase and construct such docks, wharves and buildings as may be necessary for its own use. But it shall not issue any instrument to be used as currency. The answer avers that the defendant, the Inland and Seaboard Coasting Company, accepted this note prior to its maturity for a full and valuable consideration, for the purpose of carrying on the business for which it was organized ; that the consideration paid for said note was the stock of said company, and that said note was acquired solely for the, purpose of obtaining therefrom on its maturity money for the transaction of the legitimate and ordinary business of said company, and not with any intention of holding the same after it should become due. Now, in the absence of all evidence to the contrary, we cannot escape accepting this explanation as the true character of the transaction. The company can dispose of its stock' for the purpose of obtaining the means for conducting the business allowed by law, and in the present case it received a well-secured note, all the payments on which were to be devoted exclusively to that purpose. The company may hold real estate for the accommodation of its business, and build and equip vessels, and construct docks and wharves, and so long as the proceeds of the note were to be employed in their business, and Dot for the purpose of speculation, it is difficult to see how the provisions of its charter have been seriously infringed upon. At all events, there is not apparent upon the pleadings such atotal want of authority as would justify the court in holding the transaction illegal. This would seem to dispose of the case upon the pleadings.
B ut the counsel for complainant, assuming that the defend *10 ant had no power to make the purchase of the note in question, argued that a court of equity would interfere to set it aside. The doctrine of ultra vires is well established, and even executed contracts have sometimes been declared null and void. The true rule upon this subject is, and must be, that where a contract has been executed, the court will not exercise this extraordinary power, except upon the clearest and most palpable evidence that it is without authority of law, and the case ought to be free from doubt, in which a court of equity will declare in behalf of a party who has received the fruits of a contract, that he may refuse to perform it, and invoke our interference to declare it void without requiring him to make restitution.
Mr. Sedgwick, on Statutory and Constitutional Law, page 90, says :
“It must be further borne in mind that the invalidity of contracts made in violation of the statutes is subject to the equitable exception, that although a corporation, in making a contract, acts in disagreement with its charter, where it is a simple question of capacity or authority to contract, arising either on a question of regularity of organization, or of power conferred by the charter, a party who has had the benefit of the agreement cannot be permitted in an action founded on it to question its validity. It would be in the highest degree inequitable and unjust to permit the defendant to repudiate a contract the fruits of which he retains. And the principle of this exception has been extended to other cases. So a person who has borrowed money of a savings institution upon his promissory note, secured by a pledge of bank stock, is not entitled to an injunction to prevent the prosecution of the note upon the ground that the "savings bank was prohibited by its charter from making loans of that description.”
A number of authorities are cited in support of this doctrine from Massachusetts, Pennsylvania and New York. The citation from Sedgwick is quoted in the opinion of the Supreme Court in Township of Pine Grove vs. Talcott, 19 Wallace, 678, with approbation ; and similar view’s have *11 been repeatedly expressed by the same court. Supervisors vs. Schenk, 5 Wall., 772; 16 Id., 698; Lexington vs. Cutler, 14 Id., 283; 13 Id., 298; Lind vs. The County, 16 Wall., 6; and Id., 644; and, finally, in R. Co. vs. McCarthy, 6 Otto, the court uses this language : “ The doctrine of ultra, vires, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong.” The complainant has received nine thousand dollars upon the execution of this note, and surely in the absence of all proof that the corporation had no power to receive the note, would it not clearly defeat the ends of justice to permit her to retain the money and abjure the contract, by virtue of which she obtained so large a sum ? I think we may pass from this point without further remark.
On the ai’gument, it was very justly contended, that a natural individual was permitted to enter into any contract, or to do any act which was not forbidden by law, and that a corporation could only contract or act in matters allowed by law. While this distinction is conceded, there is another principle equally well settled, and that is, that neither of them will be presumed to act without authority. The contract of a corporation will be held valid unless it is apparent on the face of the instrument that it exceeds the law. Railway Co. vs. McCarthy, 6 Otto, 267. There is no part of the charter of the New York company which appears to be infringed upon by the provisions of the contract, and it is, therefore, presumably within the legitimate exercise of its authority.
We have been cited to Matthews vs. Skinner, 62 Mo., 329. That was a case arising under the national banking law. A note and deed of trust on real estate were transferred to a banking institution, organized under the act of Congress, to secure a loan of fl 5,000, and it was decided that the bank had no power to receive a deed of trust on real estate as security for a contemporaneous loan, and an injunction was issued to prevent the sale by the bank under the deed. The banking law permits an association formed under it to purchase, hold and convey real estate in certain enumerated *12 cases, viz., when it is necessary for the transaction of its business, or as security for debts previously existing, or in satisfaction of debts previously contracted, or to secure debts due to it, and in no other eases ; and upon that ground the court might perhaps properly hold that the bank had no power to receive the trust deed as collateral security for a present advance of money. We have no such case before us. We have already seen that there is no absolute prohibition in the charter of the Inland company, organized under the act of Congress, and that the answer in this respect shows that it received the securities in question in exchange for its stock, and for the purpose of procuring means to carry on its legitimate business.
Upou the whole, we are clearly of opinion that the present is not a case in which a court of equity would be justified in declaring an executed contract a nullity, on the ground that the party had no authority to make it. The bill is dismissed.