# Jackson *v.* The State.

*Indictment for Murder.*

1. *Objections to special venire.*—Under the provisions of the special statutes regulating the drawing of jurors in Dallas and other counties (Sess. Acts 1882-3, pp. 273, 446), the special *venire* in a capital case being drawn in the presence of the court, by the officers designated by law, and a copy thereof served on the prisoner, the failure of the sheriff to find one of the persons so drawn is no ground for quashing the *venire.*

2. *Same; mistake in name of juror.*—A mistake in the name of a person summoned as a juror is not, under the general statute (Code, § 4876), a ground for quashing the *venire*, " unless the court, in its discretion, is of opinion that the ends of justice so require; but the court must, in such case, direct the name of such person to be discarded, and others to be forthwith summoned;" and said special statute containing no express provision inconsistent with this general law, the court may properly follow it, and its action is not revisable.

3. *Repealing statutes.*—Repeals by implication are not to be favored, and a special statute operates a repeal of the general law only so far as their provisions are repugnant.

From the Circuit Court of Dallas.

Tried before the Hon. John Moore.

The defendant in this case was indicted for the murder of Rufus Gill, by shooting him with a pistol. On his trial, and preliminary thereto, as the bill of exceptions states, "the following proceedings were had: On Monday, September 1st, 1884, the court set the next following Friday, it being the 5th day of the month, for the trial of said defendant under said indictment, and made an order fixing the number of jurors at sixty (60), including the regular jurors impanneled for the week, of whom there were twenty-nine (29); and the presiding judge, in open court, then drew from the box containing the names of the jurors for the county the names of thirty-one persons to be summoned as jurors in the cause. Among the names of these thirty-one (31) persons so drawn was the name of *Peter Feulner;* but the clerk of the court, in inserting said name in the special *venire*, spelled it *Peter Feunlner*, and it was so spelled in the copy of the *venire* served on the defendant as required by the order of the court. On the day set for the trial, when the case was called for trial, the defendant moved

[Jackson v. The State.]

the court to quash the *venire*, because no such person as *Peter Feunlner* had been drawn by the judge. It was admitted that *Peter Feulner* was the correct name, and that said Peter Feulner had been summoned by the sheriff, and that he was then in attendance on the court. The court refused to quash the *venire* (to which ruling the defendant excepted), and then directed the clerk to discard said name from the *venire;* and the presiding judge then drew from the jury-box another name, viz., Daniel O'Rourke, as a juror in said cause, and ordered the clerk to put his name on the *venire*, and directed the sheriff to summon him to appear forthwith as a juror; which was done, and the defendant excepted, both to the action of the court in discarding the name of said Feulner, and in placing the name of said O'Rourke on the *venire*."

"Among the thirty-one names first drawn, as above stated, was the name of P. T. Vaughan, which was placed on the *venire* furnished by the clerk to the sheriff, and also on the list of jurors served by the sheriff on the defendant. When the cause was called for trial, as above stated, the defendant moved to quash the *venire*, because the sheriff had not summoned said Vaughan, while his name was on the list served on the defendant, and there was nothing on said list to show that said Vaughan had not been summoned; and this was shown to be true. It was admitted that said Vaughan was absent from the county when his name was drawn, and had not then returned so as to be found by the sheriff. The court refused to grant said motion, and the defendant excepted. The court then examined under oath, separately, each one of said thirty-one persons drawn as aforesaid, who appeared and answered to their names, including said O'Rourke, and excluding said Peter Feulner, and also the twenty-nine regular jurors, to ascertain if they possessed the necessary qualifications of jurors in the cause; when forty-two of said jurors, including said O'Rourke, were found to possess the necessary qualifications, and were held by the court to be competent as jurors. After the names of said forty-two persons had been written on lists, as required by law, preparatory to selecting twelve jurors to try the case, the defendant again objected to being required to select a jury from said forty-two names, because said P. T. Vaughan had not been found by the sheriff, while his name was on the list served on the defendant, and said list did not show that said Vaughan had not been found; which motion the court overruled, and the defendant excepted. Thereupon, a jury was selected, the defendant striking two names, and the State one, alternately, until only twelve remained; and the said O'Rourke was one of the twelve so selected as jurors."

[Jackson v. The State.]

J. R. SATTERFIELD, and JOHN WHITE, for appellant.

T. N. McCLELLAN, Attorney-General, for the State.

SOMERVILLE, J.—The motion to quash the *venire* was properly overruled. One of the grounds upon which this motion was based, was the failure of the sheriff to find one of the jurors whose name was on the list of those drawn by the court, and ordered to be summoned, in accordance with the provisions of the special law regulating the drawing and impanneling of grand and petit juries in the county of Dallas.—Acts 1882–83, pp. 273, 278; and amendatory act, on p. 446.

This precise question was considered by us in *McElroy v. The State*, at the last term, where we held, that such a motion was without merit, the special law under consideration failing to provide for the contingency of the sheriff's failure to find one or more of this list of jurors. In that case, we observed that, "if the law operated unjustly in some cases, the remedy is for the legislative, and not the judiciary department."—75 Ala. 9.

The second ground, upon which the motion to quash was urged, was a mistake in spelling the name of one of the persons, who was summoned as a juror, in both the list prepared by the clerk for the sheriff, and in the list served by the sheriff on the defendant.

The special law fails to expressly provide for a case of this kind. The general law of the State, however, as embraced in section 4876, provides that, in such a case, the *venire* shall not be quashed, "unless the court, in its discretion, is of opinion that the ends of justice so require," but that the court must "direct the names of such persons to be discarded, and others to be forthwith summoned to supply their places; and the persons so summoned shall be disposed of in the same manner as if they had been summoned in the first instance."—Code, 1876, § 4876. The court seems to have pursued the course required by the general law, and this, we think, was without error. The special law repeals the general law, only so far as it is repugnant to its provisions. As to all matters where no repugnancy exists, we can not infer that there is any legislative intention that the one shall be abrogated by the other. Repeals by implication are universally held not to be favored.—*Joseph v. Cawthorn*, 74 Ala. 411; *Herr v. Seymour*, at present term. The quashing of the *venire* was purely a matter of discretion with the Circuit Court, and we can not review the exercise of such discretion.

There is no error in the record, and the judgment of the Circuit Court, with the sentence of death which it has pro-

[Griffin v. The State.]

nounced upon the prisoner, is affirmed. The day appointed for the execution of this sentence having passed, this court hereby specifies the thirteenth day of February, next, 1885, as the day fixed for the execution of said sentence; and it is ordered and adjudged that the said judgment and sentence be executed accordingly.