# Jefferson County *v.* Truss.

*Bill in Equity by County, for Injunction against Removal of County Convicts under Order of Governor.*

1. *County convicts of Jefferson; general and special laws relating to.*
The special laws relating to the county convicts of Jefferson, which authorize the county commissioners to hire out such convicts to the contractor for working the public roads; require the employment of all male convicts, sentenced to hard labor for the county, in work on the public roads; authorize the appointment of a superintendent of public works, and prescribe his duties in the inspection and supervision of the county convicts (Sess. Acts 1884–5, p. 709; 1886–7, p. 818),—are not repugnant to the provisions of the general statute (Code, § 4591), which require the State board of inspectors to visit the county convicts, examine into their treatment and condition, and make report thereof to the governor; and which authorize him, on the report of the inspectors, to annul any contract of hiring, and to order the removal of the convicts from the custody of the hirer.

2. *Same; executive order annulling contract of hiring.*—Under these statutory provisions, an executive order, based on the report of the board of inspectors, annulling the contract of hiring, and directing the removal of the convicts from the custody of the hirer, is matter of discretion, not requiring the judgment of any court, nor subject to review by any judicial tribunal; and said provisions apply to any contract entered into since the 25th December, 1887, when the Code of 1886 became operative, as if therein expressly incorporated as a part of the contract.

APPEAL from the City Court of Birmingham, in equity.

Heard before the Hon. H. A. SHARPE.

The bill in this case was filed on the 28th April, 1888, in

[Jefferson County v. Truss.]

the name of Jefferson county as complainant, against S. R. Truss, the sheriff of the county, and James M. Lovelace; and sought to prevent, by injunction, the removal of the county convicts from the custody and control of said Lovelace, who held them under a contract with the County Commissioners; their removal having been ordered by the judge of probate, under an order issued by Governor Seay, based on the report of the State Board of Inspectors. The court dismissed the bill, and its decree is here assigned as error. The opinion states the material facts.

HEWITT, WALKER & PORTER, for the appellant, and THOS. N. MCCLELLAN, Attorney-General, *contra*, submitted printed arguments, which were devoted to an analysis and discussion of the several statutory provisions involved, and which can not be condensed within the limits of this report.

SOMERVILLE, J.—The purpose of the bill, which was dismissed by the chancellor for the want of equity, is to enjoin the sheriff of Jefferson county from enforcing an order of the probate judge of that county, made by the direction of the Governor of Alabama, under the authority conferred by section 4591 of the present Code, of 1886. This order, made on April 25th, 1888, declares a certain contract made between one James M. Lovelace and the county of Jefferson, the complainant in the present bill, under which Lovelace then held the county convicts of said county, to be *annulled*, and adjudges that said convicts be removed from *the place* where they were at labor on April 9th, 1888, and from *the control* of said Lovelace, their hirer. The record shows that the order has been made in strict accordance with every requirement of the statute. It is made to appear that the board of inspectors of the State convicts had officially reported to Governor Seay that these particular convicts, who had been duly sentenced to hard labor for the county of Jefferson, should, in their judgment, be removed from the place where they were then at labor, and from the control of said Lovelace, to whom they were then hired. Upon the faith of this report, the Governor issued an order, as directed by the statute, instructing the probate judge of Jefferson county to remove these convicts from such place, and to annul the contract under which they were hired. The action of the probate judge is merely a strict obedience of this executive order, which is mandatory in its character.

It is insisted by appellant's counsel, that this order is void, on the ground that section 4591 of the Code, under which it was made, has no application to Jefferson county, in view of certain special legislation by which this hiring to Lovelace was authorized.

The section of the Code, upon a proper construction of which this case turns, is as follows—the portions of it more applicable to this case being put in *italics* for the purpose of more ready reference; "§ 4591. When convicts are sentenced to *hard labor for the county, and hired out* by the court of county commissioners, it shall be *the duty of the inspectors of State convicts to visit such convicts* whenever they shall deem it necessary; and they shall *rigidly scrutinize and inquire into the treatment and management of such convicts*, and shall report to the judge of probate, in writing, the condition and treatment of such convicts. *No contract shall be made* by such court *for hiring county convicts without a stipulation* therein, that the contract shall end if the bond, in the opinion of the judge of probate, becomes insufficient, or if any convict *is treated cruelly or inhumanly by the hirer* or his employee. *Whenever the board of inspectors shall notify the Governor* that convicts, who have been sentenced to hard labor for the county, *should be removed from the place* where they are at labor, or *from the control* of the person who has them hired, it shall be his duty to *order the probate judge* of the county, where said convicts were convicted, *to remove them* from such *place*, or to *annul such contract*, as the case may be; and any probate judge *neglecting or refusing to obey* such order, shall be *liable to impeachment* and removal from office, as provided for in other cases."—Criminal Code, 1886, § 4591.

The convicts in question were undoubtedly *county*, as distinguished from *State* convicts, having been duly sentenced to hard labor for the county. They had also been "*hired out* by the court of county commissioners", although employed by the hirer, Lovelace, to work the public roads under the contract which he had made with the county officials to prosecute this work, for a stipulated compensation, and for his own private gain. They were none the less hired out by the county, because hired out under contract to work certain public roads of the county. It was presumptively the duty, therefore, of the board of inspectors, to visit these convicts, thus hired out, to inquire into their treatment and management, and to make a report as to these

matters to the probate judge of Jefferson county; and also to notify the Governor as to their best judgment in reference to the propriety of removing them from *the place* where they were at labor, owing to unhealthfulness or other good reason, or from *the control* of Lovelace; *unless* it is shown that this general law has no application to Jefferson county, by reason of its repugnancy to special legislation applicable to this county.

Two special acts are relied on to support this contention— the act approved February 17th, 1885 (Acts 1884-85, pp. 709-10); and the later act of February 18th, 1887 (Acts, 1886-87, pp. 818-821)—both of which relate to the working of the public roads in Jefferson county by contract, with the use of the county convicts sentenced to hard labor for that county. The former act provided for the letting out to contract, by the court of county commissioners, of the work on certain public roads in the county; and authorized the court, in their discretion, *to hire said convicts to the contractors* who might undertake the work. The latter act made it mandatory on the court of county commissioners to employ all male convicts, sentenced to hard labor for the county, to work on the public roads of the county. It also authorized them to appoint "a superintendent of public works", whose duty it is, among other things, to faithfully carry out the orders of the commissioners court; to see that the convicts labor efficiently; that they have proper food, clothing, shelter and medical attention, and are not over-worked or maltreated; and, generally, to exercise a superintendence over the work and the convicts. It is also made the duty of the county commissioners, to see that these convicts are well fed, clothed and humanely treated, and to this end each one of them is required to visit the convicts at least once in every thirty days.—Acts 1886-87, p. 818. The maltreatment of any convict, either by the superintendent, hirer, or other person having charge of convicts, is made a punishable misdemeanor by special reference to sections 4319 and 4320 of the Code of 1876, bearing on this subject. There are other provisions in the law having no special relevancy to the inquiry before us.

Do the provisions of this special legislation repeal section 4591, above set out, so far as concerns the county of Jefferson? Both laws, general and special, have in contemplation the promotion of a more humane treatment of the convicts. The legislation on this subject, for the last

ten years, has from year to year steadily been growing more rigid in its attempted correction of the evil of maltreating convicts. Chief among the remedies adopted for this purpose was the creation of the Board of Inspectors, whose duty it was to visit convicts for the purpose of looking after their condition and treatment.—Code, 1876, § 4536. The duties of these inspectors are dignified and enlarged by the act of February 22, 1883, the declared purpose of which was "to regulate the hiring and treatment of State and county convicts" (Acts 1882-83, p. 134); and again by the later act of February 17, 1885, further defining and regulating the convict system of Alabama (Acts 1884-85, p. 187); both of which statutes, in connection with previous legislation on the same subject, have been revised, codified, and re-enacted, in the form in which they now appear in the present Code.—Crim. Code, 1886, §§ 4585 *et seq.* By section 14 of the act of 1882, one of the inspectors was required, at least quarterly, and oftener if required by the Governor, "to visit the several places of confinement of convicts sentenced to hard labor for the *county*", and make the same examination as in the case of State convicts, and report the result to the probate judge. By the act of 1885 (section 18), the inspectors, it was declared, should "not be *required* to inspect convicts hired and retained in the county of their conviction"; but this section seems to have been entirely omitted, and thereby repealed by such omission from the present Code. The present contract of hiring was entered into on December 31st, 1887,—six days after the present Code went into effect.

The general law, under this state of facts, always governs, if it is applicable to the case, and is not repugnant to the special law as to the particular point under consideration. We held, for example, in *Jackson v. The State*, 76 Ala. 26, that in organizing a jury, under the provisions of a special law applicable to certain counties, the court would follow the general law governing the organization of juries, as to any point not inconsistent with the special law, and not provided for by it. Both laws may be permitted to stand together, except where a direct repugnancy exists between them, and the one only repeals the other to the extent of such repugnancy. A repeal by implication will not be favored.—*Cook v. Meyer*, 73 Ala. 580; *Faust v. Mayor of Huntsville*, 83 Ala. 279. A statute, however, intended as a revision of the entire subject-matter, and as a substitute for previous legis-

[Jefferson County v. Truss.]

lation on the subject, will be held to be a repeal of former statutes.—*Scott v. Simons*, 70 Ala. 353. The present Code provides, that all laws of the State, and rules of the board of inspectors, in regard to State convicts, "shall also *apply to county convicts*, except as otherwise provided by law." Criminal of Code, 1886, § 4585. The general law, it is true, provides that "all convicts sentenced to hard labor for the county shall be under the direction and control of the court of county commissioners, when worked or *hired in the county* where convicted; but *otherwise* they are to be under the superintendence and control of the board of inspectors of convicts."—Code, 1886, § 4586. The special act of February, 1887, also puts the Jefferson county convicts under the control and superintendence of the court of county commissioners, and for this purpose gives them, as we have seen, the power to appoint a superintendent of public works. The argument based on this right of control and duty of supervision on the part of the court of county commissioners is, that it excludes any right or duty of supervision on the part of the board of inspectors, and all interference on the part of the Governor on any ground whatever. This would make the right of control by the commissioners, over convicts sentenced and worked in their county, to be supreme, and without condition or limitation. Such is not, in our opinion, the intention of the General Assembly, as disclosed by construing all the parts of these laws together, and giving to each clause of both laws its full operation. We find no difficulty in giving operation to section 4591, under which the order of the Governor and the probate judge were made, without violating or conflicting with any provision of the special law under consideration. The key to a law is found in its purpose and policy, which in this instance are manifest. The duty imposed upon the inspectors—to visit and report upon the treatment of county convicts hired out by the court of county commissioners—is perfectly consistent with the exercise of a like supervision by other subordinate officials. It is a cumulative precaution, designed to better insure the humane treatment of convicts. It may have been supposed that local officers would sometimes neglect this duty, or might exhibit favoritism towards a particular hirer of great personal influence in the community. However that may be, this duty of the inspectors applies, by the express terms of the statute, in both its letter and spirit, to all county convicts "hired out by the court of

[Jefferson County v. Truss.]

county commissioners" (Code, 1886, § 4591), and these convicts are unquestionably of that class.

The contract ordered to be annulled by the Governor, was entered into after the adoption of the Code. It is, therefore, made under and subject to the statute, every provision of which must govern the contract as fully as if expressly incorporated in the terms of the contract itself. The declaration of the written agreement, that the parties were to be "guided and controlled by the laws of the State of Alabama in regard to convicts," did not make this feature of it any plainer than the law alone would have made it unaided by such provision. The contract was made subject to the express condition, that it might be annulled by order of the Governor, acting on certain official information derived from the board of inspectors.—Code, 1886, § 4591. No judgment of a court is required to authorize this action; nor are the parties concerned entitled to notice, or a day in court. "It is a settled rule of law, that where a particular functionary is clothed with the power of deciding such a question, his decision, in the absence of fraud or collusion, is final. It is not open for examination, and neither party can go behind it."—*Lynde v. County*, 16 Wall. 6. The parties having agreed to this mode of deciding the question, can not complain that they have been injured by an erroneous exercise of the officer's discretion.—*Plock v. Cobb*, 64 Ala. 127. The same discretionary power of annullment is conferred on the Governor, in reference to contracts for hiring State convicts, he being authorized to terminate all such contracts "at any time, without assigning any reason therefor."—Crim. Code, 1886, § 4649.

We see in none of the arguments of appellant's counsel any sufficient reason for reversing the judgment.

The bill was properly dismissed, and the decree is affirmed.