## KUNZ v. SCHOOL DIST. NO. 28 OF HUTCHINSON COUNTY.

Laws 1879, Chapter 14, § 35, makes school districts bodies corporate with the usual powers of corporations for public purposes. Laws 1881, Chap. 24, § 2, provides that the question submitted to the district shall be "the amount of bonds that shall be issued, and the time in which they shall be made payable." Section 3 prescribes the character of the bonds, and limits the issue to $1,500, except in municipalities of more than 1,000 inhabitants. *Held*, that district officers were authorized to cancel unsold bonds regularly issued, and substitute therefor bonds specifying a different place of payment, the reissued bonds being identical in amount with those canceled.

(Opinion filed June 26, 1899.)

Appeal from circuit court, Hutchinson county. Hon. E. G. SMITH, Judge.

Action by Maria Kunz against school district No. 28 of Hutchinson county, to recover on two school bonds and inter-

est coupons.   Judgment for plaintiff, and defendant appeals. Affirmed.

The facts are stated in the opinion.

*W. J. Hooper* (*French & Orvis*, of counsel), for appellant.

When the school board issued the original bonds they exhausted the power conferred upon them and had no power to issue the new substitute bonds.   19 Am. & Eng. Enc. of Law 459: Story on Agency, § 499; 1 Dillon Mun. Corp. § 10; 1 Daniel Neg. Inst. § 288.

The school district is not estopped by the recitals in the bonds.   Where an election is required as a condition precedent to the issuing of bonds, failure to hold such election renders the bonds void in whosoever hands they may come, 2 Dan'l Neg. Ins. Secs. 1550-1 and notes; Gould v. Town of Sterling, 23 N. Y. 463; Gagwin v. Town of Hancock, 74 N. Y. 542; Alvord v. Bank, 98 N. Y. 694; Veeder v. Lima, 19 Wis. 298; Clark v. Railroad, 22 Wis. 320; Clark v. DesMoines, 19 Iowa 201; Treadwell v. Commissioners, 11 Ohio St. 183; Wallace v. Mayor, 29 Cal. 188; Layman v. City, 83 Fed. 669; Johnson v. Railroad, 44 S. W. 670; Cooley Const. Lim. 196.

It must be conceded that if the original bonds had been so altered as to make the place of payment Dubuque, Iowa, instead of Providence, Dakota, the alteration would have been material, and would have invalidated the bonds even in the hands of innocent purchasers.   Sec. 2, Dan'l Neg. Instruments, Sec. 1378; Townsend v. Starr Wagon Co., 7 N. W. 274; Winter v. Poo, 14 So. 411; Simmons v. Atkinson, 12 So. 263; Shanks v. Alber, 47 Ind. 461; Hill v. Cooley, 46 Pa. St. 259; Bank v. Clark, 1 N. W. 27; Towner v. Rutland, 29 Am. Rep. 722; Pelton v. Lumber Co., 45 Pac. 12.

*A. E. Hitchcock*, for respondent.

Cited: Edinburgh *etc.* Land Co. v. Mitchell, 1 S. D. 604; Coler v. Rhoda, 6 S. D. 652; Lynde v. Winnebago Co. 16 Wall. 6; City of Galena v. Corwith, 95 Am. Dec. 558; Natl. Life Ins. Co. v. Board, 10 C. C. A. 637; Muns Canal Co. v. Fisher, 64 Am. Dec. 436.

CORSON, P. J.  This is an action by the plaintiff to recover of the defendant the amount claimed to be due upon two school bonds and coupons issued by the defendant.  Judgment for plaintiff, and the defendant appeals.

The action was tried in the court below upon an agreed statement of facts, from which it appears that on August 1, 1881, the school board of defendant school district issued two school bonds, each for the sum of $300, payable 10 years from the date thereof, with interest at the rate of 8 per cent. per annum, as per coupons annexed, and payable at Providence, territory of Dakota, and delivered the same to Joseph Harding, who was the purchaser thereof.  It is conceded that these bonds were duly authorized by the voters of the school district, that they were regularly and legally issued, and were in all respects binding upon the district.  These two bonds, however, so issued, were canceled by the school-district officers, and two new bonds issued, under the following circumstances, as narrated in the agreed statement of facts: "Thereafter, within the year 1881, subsequently to the purchase of said school bonds, the said Joseph Harding desired to negotiate said school bonds, and for that purpose attempted to sell the same to a banker at Alexandria, Territory of Dakota, by the name of Hazen.  Hazen declined to purchase said bonds by reason of the place of

payment therein being Providence, Territory of Dakota, but would purchase said bonds if the bonds were made out with the place of payment at the German Bank, Dubuque, Iowa; and the said Hazen drew up the bonds described in the complaint, and gave them to the said Harding to have executed. Thereupon said Joseph Harding explained his desire to the officers of said district No. 28, and said officers, at the request of said Joseph Harding, issued two other bonds identical with the original ones, with the exception that the place of payment was made at the German Bank, Dubuque, Iowa, instead of at Providence, Territory of Dakota. The new bonds were delivered to Joseph Harding, and the original or old bonds were surrendered to the school district officers, and were by said district officers canceled and destroyed. There was no new consideration given by said Joseph Harding to the school board for the issuing of the new bonds, but that the new bonds were issued and substituted for the original bonds at the request of the said Joseph Harding for the purpose of helping him to negotiate the same. The same officers who issued the original bonds issued the substituted ones." The court below concluded as matter of law that the defendant was liable upon these bonds, and directed judgment accordingly.

The appellant contends that when the officers of the school district had issued the two bonds they were authorized to issue on August 1, 1881, thereafter their power was exhausted, and that the two bonds issued in their place were unauthorized and illegal, and consequently constituted no binding obligation upon the school district. The respondent, on the other hand insists that, as the school officers were authorized to issue the two bonds, they did not, by canceling the first two bonds, and

issuing the two which are the subject of this controversy, exceed their authority. We are of the opinion, that the respondent's contention is correct. Section 35, Chap. 14, Laws 1879, provides: "Every school district organized in pursuance of this act shall be a body corporate and shall possess the usual powers of corporations for public purposes." Section 2, Chap. 24, Laws 1881, provides that the question submitted to the district shall be "the amount of bonds that shall be issued and the time in which they shall be made payable." By Section 3 of the same act it is provided that "the bonds which may be issued under the provisions of this act shall be fifty dollars, or some multiple of fifty, not exceeding five hundred dollars, and shall bear interest at a rate not exceeding eight per cent per annum, payable annually in accordance with interest coupons which shall be attached to said bonds; and no greater amount than fifteen hundred dollars can be issued by any district, except in towns and cities of more than one thousand inhabitants." It is conceded in the statement of facts that the question of issuing bonds was duly submitted to the electors of the school district, and it is further conceded that the original bonds issued were strictly in conformity with the statute, and that the bonds now in controversy were identically the same, except as to the place of payment. It is not claimed that there was any fraud or dishonesty on the part of the school-district officers in canceling the first two bonds issued, and in substituting in their place the bonds now in question. Inasmuch as the school officers did not exceed their authority in issuing these bonds, we are unable to discover a legal reason why they should be held invalid, and not obligatory upon the district. The theory that when the school district officers had issued the first two bonds they had

exhausted their power is true in the sense that they could not issue bonds in excess of the $600, but within that limit we do not think their power was exhausted to cancel the bonds first issued, and replace them with others for the same amount, time of payment, and rate of interest, so long as they remained the officers of the school district. The bonds in controversy are such as they were authorized to issue in the first instance, and, such being the case, the fact that they were issued in place of the first two issued does not render them invalid, or relieve the school-district from its liability to pay them. The act of the district officers in changing the bonds was incidental to their execution, and neither were the directions of the school-district voters disregarded, nor was the law violated, in the issue of the new bonds; and in any event, the officers having acted within the powers conferred upon them by the vote of the school-district and the law of 1881, and it having been conceded in the original statement of facts that the plaintiff was a *bona fide* holder of the bonds, without notice that they had been issued in exchange for the prior bonds previously canceled, the school district would be estopped, under the recitals in the bonds, from making the defense claimed to this action.

The case of Lynde v. County, 16 Wall. 6, decided by the supreme court of the United States, seems directly in point in favor of the position of respondent in the case at bar. In that case one Clark, county judge of Winnebago county, state of Iowa, issued bonds to the amount of $20,000, which he claimed had been duly authorized by a vote of the county, and delivered the same to one Martin Bumgardner, with whom he had contracted to build a court house for the county. These bonds were issued and delivered in the county of Winnebago,

in said state and "afterwards Clark went to New York with Bumgardner, and professing to act as county judge of the county, made and issued to Bumgardner new bonds for $20,000, which new bonds differed in the amount of each, in the time of payment, and in the amount of coupons, and also in other particulars; and he had a seal made at New York, which he called the seal of the county. He then and there signed the said bonds, and affixed the said seal to them, and delivered them to Bumgardner." The old bonds were in accordance with the proposition made by Clark, county judge, when the new ones spoken of were delivered up to Clark at New York, and were afterwards canceled. It is stated in a note to the decision by the reporter that the bill of exceptions showed that the county offered to prove, and it was admitted in evidence, that Clark, "finding that the original bonds could not be negotiated," had other bonds printed, purchased a seal, etc. The court held in that case that under that state of facts the bonds were valid, and binding upon the county. Justices FIELD and MILLER and Chief Justice C HASE dissented, but mainly upon the ground that, in their view, the electors of the county had not authorized any bonds to be issued by the county judge, and also because the county judge was not authorized to act as such outside of the county and state. The authority of the county judge to make the change in the bonds, had he been authorized to issue them, and had he made the change while acting as such judge in the county of Winnebago, does not seem to have been questioned by the dissenting judges.

As before stated, when officers of a corporation are acting within the limits of the authority conferred upon them by law, they have discretion as to the method of exercising that au

thority; and acts done in good faith in correcting mistakes in instruments executed, or in exchanging one for another, to carry into effect the agreement of the parties, will be upheld by the courts. City of Galena v. Corwith, 48 Ill. 423, 95 Am. Dec. 558, and note. It is conceded in the agreed statement of facts that the money received from Harding on the sale of the bonds was properly expended by the school-district officers in the erection of a school house for the district, and it would be manifestly unjust to permit the school-district to escape liability upon the technical ground that the bonds in controversy were issued to Harding in exchange for those first issued and canceled to make the bonds more readily salable in the market, where the officers had not exceeded the powers conferred upon them by law and by the vote of the electors. The court therefore ruled correctly in holding that the bonds constitute a legal obligation against the defendant in favor of the plaintiff. The judgment of the court below is affirmed.