In the Matter of the General Assignment of ALFREDERICK S. HATCH and FREDERICK H. HATCH, Individually and as Copartners, Composing the Firm of A. S. HATCH & Co.

In the Matter of the Claim of COLLIS P. HUNTINGTON, Appellant ; HORACE H. CHITTENDEN, Assignee, Respondent.

1. GENERAL ASSIGNMENT — EQUITABLE SET-OFF OF MUTUAL DEBTS. In a proceeding under the statute relating to general assignments, for the purpose of ascertaining and adjusting claims by and against the assignee, it is not essential to the application of the equitable rule of set-off that the mutual debts or claims should both have been due at the time of the assignment, but, while the debt due from the estate must have been due at that time, the debt due to it may have matured thereafter.

2. DEBT TO ESTATE MATURED AFTER ASSIGNMENT. A person who at the time of a general assignment is a creditor of the insolvent may, by the rule in equity, set off the debt held by him at the time of the assign-

ment against the proceeds of a claim which had been intrusted to him for collection prior to the assignment but which had not become a debt due from him to the insolvent until its collection subsequent to the assignment.

*Matter of Hatch,* 22 App. Div. 16, reversed.

(Argued February 28, 1898; decided April 19, 1898.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 6, 1897, modifying and affirming, as modified, an order of Special Term confirming the report of a referee.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*Maxwell Evarts* for appellant.   Mr. Huntington had a right under the statute to set off his claim for money loaned to Hatch prior to the assignment against the claim of Hatch's assignee for his proportion of the money collected by Huntington in the Baltimore and Canadian suits under the agreement of June 24, 1886.   (Code Civ. Pro. §§ 501, 502; *Norton* v. *McCarthy,* 30 N. Y. Supp. 1057.)   Mr. Huntington is entitled to set off *pro tanto* the one hundred and sixty-three-two hundred and sixty-thirds of the net collections made by him under the agreement of June 24, 1886, against the amounts due him from Hatch and his firm at the date of the assignment.   (*Hughitt* v. *Hayes,* 136 N. Y. 163; *Scott* v. *Armstrong,* 146 U. S. 499; *Yardley* v. *Clothier,* 49 Fed. Rep. 337; 51 Fed. Rep. 506; *Adams* v. *S. D. Co.,* 57 Fed. Rep. 888; *Van Wagoner* v. *Patterson Co.,* 23 N. J. L. 284; *Smith* v. *Felton,* 43 N. Y. 419; *Smith* v. *Fox,* 48 N. Y. 674; *Rothschild* v. *Mack,* 115 N. Y. 1; *Richards* v. *La Tourette,* 119 N. Y. 54; *Fera* v. *Wickham,* 135 N. Y. 223; *Skiles* v. *Huston,* 111 Penn. St. 254.)

*George C. Lay* and *Thomas P. Wickes* for respondent. The set-off was properly disallowed in the court below for the following reasons: At the date of the assignment there was no subsisting demand, actual or contingent, against Huntington.   The rights and equities of the other creditors, which

became fixed by the assignment, are superior to the right of
the secured creditor to a set-off. The claim of the estate
against Huntington was unliquidated, and its amount could
only be determined after an accounting. (Waterman on Set-
off [2d ed.], § 25 ; *Chance* v. *Isaacs,* 5 Paige, 592 ; *Hatch* v.
*Mayor, etc.,* 82 N. Y. 449 ; *Pond* v. *Harwood,* 139 N. Y.
111 ; *Richards* v. *La Tourette,* 119 N. Y. 54 ; *O'Connor* v.
*Brandt,* 12 App. Div. 596 ; *Martin* v. *Kunzmuller,* 37 N.
Y. 396 ; *Hamilton* v. *Piza,* 6 App. Div. 598 ; *Fera* v. *Wick-
ham,* 135 N. Y. 223 ; *Hackett* v. *Connett,* 2 Edw. Ch. 72 ;
*Cummings* v. *Morris,* 25 N. Y. 625 ; *Elliott* v. *Smith,* 77
Hun, 116.)

O'BRIEN, J. The only question necessary for us to consider
in this case is that of the right to offset one claim against
another. The facts that bear upon this question are these :
On the 14th of November, 1887, the firm of A. S. Hatch &
Co., as a firm, and each of the individual members as such,
made a general assignment for the benefit of creditors. At
that time Huntington had a claim against A. S. Hatch, indi-
vidually, of $17,389.22, and against the firm of $20,167.49,
and he still holds these claims against the individual and firm
estate in the hands of the assignee.

On the 24th of June, 1886, more than a year before the
assignment, Huntington had entered into a written contract
with A. S. Hatch, individually, whereby the latter transferred
to the former certain judgments which were to be collected,
and when collected divided between the parties in the manner
indicated in the agreement. Nothing, however, had been col-
lected on these judgments, and nothing was due on this con-
tract at the date of the assignment above mentioned. Several
years after the assignment was made a considerable sum of
money was paid to Huntington in compromise and satisfaction
of the judgments by the defendants therein, and for a certain
share of the sum so paid, after deducting certain expenses,
Huntington is bound to account to Hatch, or in this case to
his assignee.

This was a proceeding under the statute relating to general assignments for the purpose of ascertaining and adjusting the claim of the assignee against Huntington by reason of the money in his hands received on the judgments, and of Huntington against the assignee in consequence of his debt against Hatch individually above stated. The amount of the claim of each party was determined upon a reference under the statute and subsequently confirmed by the court.

The referee and the court permitted Huntington to set off against the claim of the assignee for the moneys collected on the judgments, the debt held against Hatch individually at the date of the assignment, but the Appellate Division reversed the order in so far as it permitted the offset, and this presents the only question of law which we need consider.

In the view that we have taken of the case, it is not necessary to decide whether the right of set-off exists under the statute on that subject. (Code, §§ 501, 502.) The question can be disposed of under the rule in equity, which exists, as it always did, quite independent of the statute. It is this rule that the learned court below dealt with, as will appear from the opinion. But we think that the learned judge who spoke for the court misapprehended the true scope and application of the decisions on the question in assuming, as he evidently did, that it is necessary that the mutual debts or claims should both be due at the time of the assignment of the insolvent estate. The insolvency of one of the parties in this case draws the question with respect to the right of set-off into the domain of equity. The party who asserts the right is Huntington alone. His debt was due when the assignment was made, though the claim of the assignee against him did not accrue until some years afterwards. The question is, whether Huntington is not entitled to apply the former in extinguishment of the latter.

The general language used in some of the decisions would seem to sustain the decision below, but it will be seen on closer examination that it is not necessary, in order to warrant the set-off that both debts should be due at the time of the insol-

vency. The learned court below supposed that the case of *Fera* v. *Wickham* (135 N. Y. 223) deprived Huntington of the right of set-off. In that case neither claim was due at the time of the assignment, but both accrued afterwards, and the right was for that reason denied. It was held that where this right did not exist at the time of the insolvency or assignment it could not arise afterwards.

In *Smith* v. *Felton* (43 N. Y. 419) an assignee of an insolvent sued upon a note made by the defendant to the insolvent not due at the time of the assignment. The defendant had a debt against the insolvent exceeding the amount of the note which was due at the time of the assignment. It was held that the defendant was entitled to set off this claim against the note. In *Smith* v. *Fox* (48 N. Y. 674) the debt due to the assignee did not accrue till after the assignment, but that held by the defendant was due, and the latter was allowed to set off the debt so due.

In *Richards* v. *La Tourette* (119 N. Y. 54) the debt due from the assignee accrued prior to the assignment, while the debt due *to him* matured afterwards, as is the case here, and it was held that the right of set-off existed in such a case. In *Rothschild* v. *Mack* (115 N. Y. 1) the court said : " It has been frequently held that, as to the right of set-off in equity, the fact that the debt owing to the insolvent is not due when he makes an assignment is *entirely immaterial* " (p. 8). The same rule was laid down in the same words in the case of *Richards* v. *La Tourette* (*supra*, p. 58) and a careful reading of the opinion in *Fera* v. *Wickham* (*supra*) will show that the learned judge had the same principle in mind.

The principle upon which the rule proceeds is, that in case of mutual debts it is only the balance which is the real and just sum owing by or to the insolvent. Hence, when the assignee in this case became vested with the assets of his insolvent assignor, he took the contract above mentioned which had not then matured into a claim or right of action, but which did mature in his hands some years thereafter. He acquired no greater right than his assignor had prior to the

assignment, had the claim then matured, and since Hunting-
ton had, prior to the assignment, a valid existing set-off against
what the assignee took, that right was not lost or impaired by
the assignment. The rights of the parties being adjusted in
equity as of the date of the insolvency, all the assignee took
as assets was the balance subsequently accruing on the con-
tract, after deducting Huntington's debt due against the
assignor before the rights of creditors intervened.

Had Huntington's debt accrued after the insolvency, as
that of the assignee did, then equity would not permit the set-
off and the case would come within the rule laid down in
*Fera* v. *Wickham* (*supra*), but, as already shown, such was
not the case. When the debt of the party claiming the set-
off does not exist when the insolvent estate passed into the
hands of a trustee for creditors, but accrued subsequently dur-
ing the administration of the estate, then the equities of the
other creditors will intervene to prevent the depletion of the
assets in the hands of the trustee by extinguishing a good
debt due to the estate by a bad one due to the creditor from
the estate. In all cases of mutual debts, it is the insolvency of
one of the debtors and the rights of the other creditors in the
assigned estate that equity takes notice of, and modifies the
legal right of set-off accordingly in order to promote equality
and justice. But that condition of things exists only from the
time when the assignment takes effect, and while it is the gen-
eral rule in the administration of insolvent estates that equality
among creditors is equity, yet the court will not ignore the
principle that it is only the balance in case of mutual debts or
obligations which is the real sum owing by or to the insolvent,
and the assets in the hands of the trustee for distribution to
creditors are measured by this rule. Equity always regards as
done what ought to have been done, and, hence, in this case it
applies the past-due debt of Huntington, existing at the time
of the assignment upon his unmatured obligation in the hands
of Hatch, which passed to the trustee. (*Hughitt* v. *Hayes*, 136
N. Y. 163.)

This is the rule that prevails with respect to the right of set-

off in the Supreme Court of the United States. In *Scott* v. *Armstrong* (146 U. S. 499) the receiver of an insolvent national bank sought to recover upon a note which fell due after his appointment. The maker of the note claimed a right to set off against his obligation a sum of money deposited to his credit with the bank prior to the insolvency. The precise question certified to the court for its decision was this: "Where a national bank becomes insolvent and its assets pass into the hands of a receiver appointed by the comptroller of the currency, can a debtor of the bank set off against his indebtedness the amount of a claim he holds against the bank, supposing the debt due from the bank to have been payable at the time of its suspension, but that due to it to have been payable at a time subsequent thereto?" The court answered the question in the affirmative, and in delivering the opinion the learned chief justice said: "Where a set-off is otherwise valid, it is not perceived how its allowance can be considered a preference, and it is clear that it is only the balance, if any, after the set-off is deducted which can justly be held to form part of the assets of the insolvent. * * * The state of case where the claim sought to be offset is acquired after the act of insolvency is far otherwise, for the rights of the parties become fixed as of that time, and to sustain such a transfer would defeat the object of these provisions. The transaction must necessarily be held to have been entered into with the intention to produce its natural result, the preventing of the application of the insolvent's assets in the manner prescribed."

From this review of the authorities, I think it is quite apparent that the decision of the court at Special Term allowing the set-off in this case was correct.

The order of the Appellate Division should, therefore, be reversed, and that of the Special Term affirmed, with costs.

All concur.

Order reversed, etc.