(29 Misc. Rep. 145.)

### In re ARKELL PUB. CO.

(Supreme Court, Special Term, New York County. October, 1899.)

1. INSOLVENCY—SET-OFF AGAINST ESTATE.
   Though an insolvent's debt due prior to insolvency may be set-off
   against the creditor's own unmatured debt to him, the latter debt must
   exist at the date of the insolvency, and hence a debt for rent incurred by
   a creditor on a continuance of a lease with the receiver, and which could
   not otherwise have been demanded, could not be discharged by such a
   set-off.

2. LANDLORD AND TENANT—EVICTION BY TITLE PARAMOUNT—RIGHT TO UNMA-
   TURED RENT.
   Rent due after a total eviction by title paramount is discharged, without
   the landlord's right to any apportionment.

In the matter of the voluntary dissolution of the Arkell Publish-
ing Company. On motion for an order stating priority and amount
of preferred claims against the company on the return of the re-
port on a reference to take proof of claims.

J. S. L'Amoreaux, for receiver.
Theodore De Witt, for Goelet estate, claimant.
Louis D. Speir and Newell Martin, for Sackett & Wilhelms Co. and
Hopkins & Blaut, claimants.

BISCHOFF, J. The questions presented have to do with conflict-
ing claims of the Goelet estate and the Sackett & Wilhelms Com-
pany, as preferred creditors, to a certain fund in the receiver's
hands; and, while the moving papers were framed as upon a motion
for a reference to determine the facts upon which the dispute is
based, it is now conceded that the facts are sufficiently presented by
the papers submitted, and that the questions may be determined as
raising only matters of law. The Arkell Company, a corporation en-
gaged in the publishing business, was the lessee, under a lease from
the Goelet estate, of the building No. 110 Fifth avenue; leasing in
turn to subtenants so much of the building as it did not use for its
own purposes. The Sackett & Wilhelms Company was one of these
subtenants, and also had close business relations with the Arkell
Company, performing the main lithographing work for the latter's
publications. On June 8, 1898, the Arkell Company was placed in
the hands of a receiver duly empowered and directed to continue
the business; and the claim of the Sackett & Wilhelms Company
is for a balance due to it, above actual payments made, for work
performed by it at the request of the receiver, this balance being

$4,722.41. It appears that the receiver, when taking possession of the premises, was unwilling to assume the burden of the lease from the Goelet estate under which the Arkell Company had operated its business; and it was agreed by the receiver with Mr. De Witt, the representative of the estate, that the rents received from subtenants by such receiver during the period of his occupancy as such should be paid by him to the estate pending a determination by Mr. De Witt as to what course he should take with regard to the lease. This agreement was made without notice to the subtenants, and the receiver in fact continued as their landlord by virtue of the subsisting leases made to them by the Arkell Company. So far as may be gathered from the papers, the full amount in the receiver's hands, applicable to the various claims, is $5,767.09; and the receiver has characterized this fund as rent received from subtenants during the period of his occupancy, from June 8 to July 22, 1898. Except so far as the fund is properly to be viewed as rent in the receiver's hands, the Goelet estate lays no claim to it; and, so far as it is rent, it may not be made subject to the claims of the Sackett & Wilhelms Company and of Hopkins & Blaut, according to the order of preferences as found by the referee, the priorities stated in the report not being questioned by the moving papers. The inquiry, then, is as to how far this fund of $5,767.09 is properly to be characterized as rent collected by the receiver from subtenants. Itemized, the fund is made up as follows:

| | | |
|---|---:|---:|
| By rent actually collected from certain subtenants from June 8th to July 22d | $1,365 | 93 |
| By a sum otherwise due to Hopkins & Blaut for services, etc., but applied by the receiver to their rent from June 8th to June 30th | 425 | 26 |
| By sums otherwise due to the Sackett & Wilhelms Company, but applied by receiver to their rent from June 8th to June 30th | 1.987 | 95 |
| And from July 1st to July 22d | 1,987 | 95 |
| Total | $5,767 | 09 |

As to the item of $425.26, there is no serious dispute that the sum could not be treated as rent collected by or due to the receiver from Hopkins & Blaut; the rent for the whole month of June having been paid by that firm to the Arkell Company, according to the terms of its sublease, on the 1st day of that month, and before the receiver's appointment. The transaction as to the June rent having been closed prior to the insolvency of the Arkell Company, the amount of that rent came into the receiver's hands as a part of the assets generally, and to those assets the claim of Hopkins & Blaut for work done at the request of the receiver necessarily applies.

With regard to the item of $1,987.95, charged by the receiver against the claim of the Sackett & Wilhelms Company, and applied as their rent from June 8th to June 30th, I must conclude that the receiver's attitude is correct, and that the amount is to be credited to the Goelet estate upon its preferred claim for rent collected. The lease to the Sackett & Wilhelms Company from the Arkell Company provided for the monthly payment of rent at the end of each month, and it appears that on June 6th, prior to the insolvency, this claimant was the holder of a matured obligation of the Arkell Company

sufficient in amount to cover the June rent; and it is alleged that the claimant elected to, and did, set off this debt against the rent which otherwise would have been payable by it to the receiver on June 30th. The law may be taken as settled that, where the debt of an insolvent is due to his creditor prior to the date of the insolvency, the creditor may set off that debt against his own indebtedness to the insolvent, when maturing after the insolvency (In re Hatch, 155 N. Y. 401, 50 N. E. 49); and this rule is invoked by the Sackett & Wilhelms Company to support a set-off of the insolvent corporation's debt against the receiver's demand for rent which accrued during a period of tenancy mainly at the receiver's hands. Examination of the reasons upon which this rule is founded must lead to the conclusion that the set-off here attempted by the creditor cannot be upheld. The principle of the rule is that the assignee of the insolvent, whose creditor is also his prospective debtor upon an unmatured demand, takes the demand as an asset of the estate only so far as it exceeds the debt of the insolvent, because "in case of mutual debts it is only the balance which is the real and just sum owing by or to the insolvent," and because the assignee "acquired no greater right than his assignor had prior to the assignment, had the claim then matured." In re Hatch, 155 N. Y. 405, 50 N. E. 50. Obviously, the theory that the mutual debts may be balanced as of the date of insolvency can have no application to a case where the debt of the creditor to the estate of the insolvent is to arise only after the performance by the assignee of an executory contract entered into between the creditor and the insolvent prior to the insolvency, for neither in theory nor in fact could anything be due from the creditor to the insolvent upon such a claim when the insolvency was declared. Nor could the rights of the assignee after completion of the contract be measured and limited by the rights of the assignor as existing against the creditor, since, so far, the claim against the creditor was not a mere asset in the hands of the assignor, but owed its existence to the consideration afforded by the assignee. In this case the Sackett & Wilhelms Company on June 8th, the date of insolvency, owed nothing to the Arkell Company for June rent; and the receiver of the latter company took no asset in the form of a demand for June rent, except so far as he was prepared to furnish consideration for the payment by securing to the tenant a continued occupancy until the end of that month. Had he failed so to do, and had elected to take the assets as they were, there would have been no future demand against this creditor. Hence, testing his rights by the rights of the insolvent, he took the estate at the date of the insolvency without any prospective claim, and when this particular claim arose there was no mutuality between the debts of the insolvent and of the creditor. The right of set-off, in cases of insolvency, depends upon principles of equity; and it is obviously more equitable to require that persons dealing with a receiver who continues the insolvent's business should meet the receiver's demands against them, arising in the course of his transactions, in return for the preference accorded them for demands against him, than to allow the preference, on the one hand,

and then to recognize the right to resist the receiver's claims through application of the debts of the insolvent, on the other. If this last were the true situation, the receiver would be compelled to discriminate in his business dealings against all persons who had had dealings with the insolvent, to escape the necessity of conducting the business solely upon the credit of the latter's debts, and certainly the rule must be otherwise. The conclusion that the Sackett & Wilhelms Company could not apply the debt of the Arkell Company to the June rent due the receiver necessarily justifies the retention by the receiver of this portion of the sum due to that claimant, and its application to the fund of rent collected, and, indeed, this result is not disputed.

Passing to the second item of $1,987.95, withheld by the receiver from this claimant and applied to the latter's rent for the period from July 1st to July 22d, it should, I think, be held that the item is improperly charged, and that the claimant the Sackett & Wilhelms Company is entitled to the sum upon its preferred claim. As has been stated, this tenant's rent was due at the end of each month, and accordingly nothing accrued to the receiver for July rent until July 31st; but on the 22d of that month the tenant was dispossessed from the entire premises covered by its lease, in summary proceedings instituted by the Goelet estate for nonpayment of rent due from the Arkell Company under the principal lease of the building. Here, then, was a total eviction by title paramount, and accordingly the rent subsequently falling due was discharged, without any right of the landlord to an apportionment. Insurance Co. v. Sherman, 46 N. Y. 373; Simers v. Saltus, 3 Denio, 220; Giles v. Comstock, 4 N. Y. 270; Frommer v. Roessler, 12 Misc. Rep. 152, 33 N. Y. Supp. 13; Gugel v. Isaacs, 21 App. Div. 503, 48 N. Y. Supp. 594.

An order may be presented fixing the amounts to be paid, in accordance with the views above expressed; the claim of the preferred claimant, the Fless & Ridge Printing Company, to be allowed in its order. If the receiver has funds in his hands applicable to the payment of preferred claims, over and above the fund of $5,767.09, the claimant Hopkins & Blaut would be entitled to a further sum of $80.50 (not involved in the application of rent and otherwise due); and the Sackett & Wilhelms Company should receive the balance of its preferred claim apart from the two items considered, to wit, the sum of $746.51. Ordered accordingly.