## JOSEPH M. DOUGLASS *et al.*, RESPONDENT, *v.* THE MAYOR AND BOARD OF ALDERMEN OF VIRGINIA CITY, APPELLANTS.

PROMISSORY NOTES OF VIRGINIA CITY. The City of Virginia, by its Mayor and Board of Aldermen, having taken a lease of certain rooms for the accommodation of its Common Council, at a rental of two hundred dollars per month, and having agreed in the lease if the rent were not paid as it fell due, to execute its promissory notes therefor, bearing interest at five per cent. per month; and its notes having been accordingly executed in regular form; and it being admitted that it had the power to take a lease: *Held*, that it had the power to execute the notes as a means of carrying out the power of taking a lease.

INCIDENTAL POWERS OF MUNICIPAL CORPORATIONS. A municipal corporation, like a trading one, may, unless in some way restrained by charter, enter into any contract necessary to enable it to carry out the powers conferred upon it, such, as incurring debts, executing and giving promissory notes, and adopting all the ordinary or usual means which may be necessary to the full exercise, enjoyment, and discharge of its powers expressly given.

CONSTRUCTION OF CHARTER OF VIRGINIA CITY—CONTINGENT FUND. The Charter of Virginia City (Stats. 1864, 55; Sec. 23, Sub. 18) provides, that "the Common Council shall not authorize the issuance of, nor shall any city officer issue, any scrip or other evidence of debt or order on the Contingent Fund, unless there be actually cash in the treasury to meet the order or warrant so drawn": *Held*, that the restriction here imposed applied solely to the Contingent Fund, and did not prevent the city from issuing, in proper cases, its promissory notes or other evidences of indebtedness drawn on the General Fund, without regard to cash in the treasury.

INTEREST ON INDEBTEDNESS OF VIRGINIA CITY. The fact that a provision of the charter of Virginia City (Stats. 1864, 55, Sec. 23, Sub. 21) limits the interest to be paid on certain bonds therein authorized to be issued to twelve per cent., does not by implication deny the right to pay a higher rate of interest upon any other character of indebtedness, but, on the contrary, by limiting the rate to be paid on one peculiar kind of paper admits the presumption that upon all other kinds no limitation was intended.

APPEAL from the District Court of the First Judicial District, Storey County.

This action was commenced on April 21st, 1868, to recover the sum of five thousand four hundred and eighty dollars and eighty-three cents, principal and interest, on eight promissory notes, and a bill for furniture, sold and delivered, and accruing interest on the principal sum of one thousand eight hundred and twenty-four dollars and sixty cents, at the rate of five per cent. per month. The notes were all of the same general character as the first, which was as follows:

" $200.00.                VIRGINIA, N. T., September 5th, 1864.

" Thirty days after date, for value received, the City of Virginia promises to pay to Geo. F. Jones & Co., or order, two hundred dollars (for one month's rent of council room to date) with interest from date until paid at the rate of five per cent. per month, payable monthly; both principal and interest payable in United States coin only.

{U. S. Int. Rev. stamp, 10 cents, cancelled.}        R. E. ARICK, Mayor."

At the time the notes were given the firm of Geo. F. Jones & Co., the payee, consisted of George F. Jones, Joseph M. Douglass, and Luke B. Richardson. Afterwards the firm dissolved, and Jones assigned all his interest to his former copartners, by whom this suit was instituted. Judgment was rendered in accordance with the prayer of the complaint and the defendants appealed.

*Mesick & Seely*, for Appellants.

We do not deny the power of the Mayor and the Board of Aldermen of Virginia City to make the contract of lease, and subject the city to the payment of the indebtedness created thereby. What we do deny is, that after making the contract of lease and creating the debt thereunder, the city authorities, under the charter of 1864, had any power to change the form of that indebtedness, so as to make it more burdensome to the city, or do aught else in respect to it than make provisions for its payment. The liability of the city, upon the lease for the rent, was perfect. The giving of the notes in no way seems incidental or necessary to the leasing of necessary buildings for the use of the city. They did

not pay the rent.    They subserved no purpose except that of voluntarily increasing the burdens of the city, and giving an advantage over other city liabilities.

Whatever may be its defects and inconsistencies, the city charter of 1864 clearly evinces the design of having the affairs of the city administered on a cash basis and economically, as well as of imposing severe restraint upon the authority of city officers to swell the city debt beyond the charter limits.    This object could not be secured, and so the Legislature must have seen, by paying high rates of interest for delays to which creditors to the city might be subjected; and for this reason, doubtless, was inserted in the charter the last clause of subdivision eighteen of section twenty-three. Moreover, it seems plain, from subdivision four of section twenty-three, that the city officers were restricted from pledging the city to the payment of interest, except upon the bonds specified in that subdivision.    For these reasons we submit, that the promissory notes in question are in violation of the restriction imposed upon the city officers by the charter.

As to the fact of there being money in the treasury at the time these notes were given, the burden of proof was on the plaintiffs to show it, because they were bound to know that the act of giving the notes was within the scope of the authority of the city officers, and by the terms of the charter such authority was prohibited, except on condition of the money being in the treasury.

*Williams & Bixler*, for Respondent.

The power of corporations, municipal or public, as well as private, to make contracts and incur debts in the prosecution of their legitimate business, and to give their promissory notes, is firmly established—not only by universal practice, but by repeated judicial decisions.    The power to contract, when given by charter, carries with it all the incidents of fixing the terms of the contract, making proper evidence of it, and executing all the necessary obligations and writings stipulating for its performance.    (*Union Water Co.* v. *Murphy's Flat Fluming Co.*, 22 Cal. 620 ; *The People* v. *Brennan*, 39 Barb. 545 ; *Ketchum* v. *The City of Buffalo and Austin*, 14 N. Y. 356 ; *Tucker* v. *Mayor, etc.*, 4 Nev. 20.)

The next inquiry is : Whether the council was prohibited from complying with that part of its contract which provided for the issuance of the notes of the city.   We do not understand it to be claimed, that the notes were void on the ground of being issued at a time when there was no money in the treasury to meet them; but, inasmuch as " warrants " and " orders " only are mentioned in the concluding clause of subdivision eighteen of section twenty-three of the city charter, as the " evidences " of debt which might be issued by authority of the council, that therefore they were the *only* evidences or forms of obligations which might be issued.   It will be observed, however, that the " orders," " warrants," and " evidences of debt," mentioned in the subdivision, refer exclusively to those payable out of the *contingent fund*.   No other construction can grammatically be given to it; and if the Legislature intended to extend it further, it indulged in a very unnecessary use of language—for if it had been intended to embrace all of the funds, then the expression " on the contingent fund " was unnecessary.

The next objection to our notes, and against a rate of interest greater than ten per cent. per annum, is alleged to be found in subdivision twenty-one of section twenty-three of the charter.   But a complete answer to this objection is found in the fact that subdivision twenty-one, as well as subdivisions twenty-two and twenty-three, relate entirely to time bonds or scrip in the sum of one hundred thousand dollars, to be sold to the highest bidder under seal, and which have no relation whatever to the ordinary course of business of the city.   It was doubtless intended that those time bonds should be converted into money with which to pay off old indebtedness, and put the affairs of the city on a cash basis.   It will be observed also, that the Council was authorized to issue bonds in that sum, " over and above the revenue of the city "—while the previous subdivisions, relating to the ordinary transactions of the city, limit the liabilities to be incurred to its " estimated annual revenue."

By the Court, LEWIS, C. J. :

On the twelfth day of April, A.D. 1864, the City of Virginia, by its Mayor and Board of Aldermen, leased of the plaintiffs certain

rooms in the city for the accommodation of its Common Council, agreeing to pay therefor a monthly rental of two hundred dollars in gold coin. The parties to this lease knowing that the city would probably not be able to pay the rent as it became due, incorporated in the instrument a provision to this effect: That the notes of the city, bearing interest at the rate of five per cent. per month, payable monthly, should be considered and received by the lessors as equivalent to cash. As anticipated, the money was not paid as it became due; consequently, in accordance with this provision of the lease, the notes here sued on were executed in regular form and delivered to the plaintiffs. To the complaint, fully setting out these facts, the city interposed a general demurrer, taking the ground that the corporation, although having the power to enter into the lease, (a fact which is here admitted) had no right or authority to execute these notes. This demurrer was overruled by the Court, and no answer being filed within the time granted for that purpose, judgment was rendered for the plaintiffs in accordance with the prayer of the complaint. From that judgment, and an order subsequently made refusing to correct it, this appeal is taken, the same points, and those only, being made here as in the Court below.

That a municipal, like a trading corporation, may, unless in some way restricted by charter, enter into any contract necessary to enable it to carry out the powers conferred upon it—incur debts and execute and give promissory notes in the discharge of its legitimate powers; or, in other words, that it has the right to adopt all the ordinary or usual means which may be necessary to the full execution or enjoyment of the power expressly given by its charter, is so firmly established by the authorities that at the present day it may be considered an elementary principle of the law of corporations. (*Ketchum et als.* v. *The City of Buffalo,* 4 Kernan, 356.) It is admitted that the taking of the lease and the agreement to pay the specified rent, were strictly within the authority conferred upon the defendant, but it is objected that it had no right to give its promissory notes bearing interest for the rent as it became due, counsel arguing that if it had the authority to issue any evidence of indebtedness whatever, it was confined to ordinary warrants or scrip, which upon their face bear no interest. We find nothing in the

Act incorporating the defendant restricting it to the issuance of any particular kind or character of paper as evidence of its indebtedness. It is true, in the absence of special contract to the contrary, the proper course and the one usually pursued, is to issue a warrant on the treasury for money payable by the city. However, as in this case it was expressly agreed by the defendant that promissory notes, bearing a certain rate of interest, should be issued to the plaintiffs instead of the ordinary warrants; that agreement should be fully upheld, unless it be found that the defendant had not the authority to make it. Why, it may be very properly asked, if it had the authority to lease the rooms and contract to pay rent for them at the rate of two hundred dollars a month, had it not the right to agree that the rent, if not paid when due, should draw interest and be evidenced by a promissory note? Under the rule already announced it certainly had that right, if not in some way restrained by the law of its creation, for the giving of the notes was an ordinary means employed for carrying out a power expressly conferred. Having the authority to lease, it had the right to adopt all the usual means necessary to the complete execution of such authority. In *Ketchum* v. *The City of Buffalo* it was held that the power to "regulate and establish markets" gave to the city the power to purchase market grounds on credit, and to execute its bond, bearing interest at seven per cent. per annum, for the purchase money. We can observe no difference upon principle between that case and this. If the power to establish and regulate markets conferred the right to purchase grounds for that purpose and to execute an interest-bearing bond for the purchase money, so it would seem, upon like reasoning, would the power to rent rooms or buildings for the use of the city authorize the issuance of interest-bearing promissory notes for the rent as it becomes due.

But it is argued for the city that section twenty-three of the charter in fact prohibits it from issuing any evidence of indebtedness whatever unless there was money in the treasury to meet it; and it is not claimed that there was at the time these notes were executed. This conclusion it is claimed is warranted by the last clause of subdivision eighteen of the section which is in this language: "The Common Council shall not authorize the issuance of,

nor shall any city officer issue any scrip or other evidence of debt, or order on the Contingent Fund, unless there be actually cash in the treasury to meet the order or warrant so drawn."

It appears to us this language simply prohibits the issuance of orders or scrip on the Contingent Fund alone, whilst the city was left at liberty to issue such evidences of indebtedness, or any other kind on the General Fund of the treasury—that is, that the restriction here imposed applies solely to one fund of the treasury—the contingent. Such certainly seems to be the fair and grammatical construction of this clause of the section. If it were intended to make this prohibition apply to the entire treasury or all the funds, why mention the Contingent Fund and not the others ? By the arrangement of the language " scrip " and " other evidence of indebtedness," are as clearly confined to the " Contingent Fund " as the word " order "—that is, scrip or other evidence of debt could no more be issued upon the Contingent Fund than an order. That the words " scrip or other evidence of debt " applies to the treasury generally, and that an order only is prohibited from being issued against the Contingent Fund, thus leaving the defendant free to issue any evidence of debt upon that fund except an *order*, is in our opinion a proposition which cannot be satisfactorily maintained upon the words of the statute. If the words " scrip or other evidence of debt," like the word " order," have reference to the Contingent Fund, they do not apply to any other; but if they do not, it must follow that any kind of evidence of debt could be issued against that fund, except such as might be strictly called an order —a proposition which we hardly think will be contended for by counsel. The Legislature having clearly expressed its purpose, and there being no ambiguity in the language, it is not for the Courts to inquire why the restriction is confined to the Contingent Fund alone. To restrict the prohibition to that particular fund may appear to convict the Legislature of doing a foolish act, but there may have been a very wise and good reason for it, nevertheless, not apparent to us. However, it is not certain that we should not be as reluctant to convict that body of doing an unwise or useless act, as of utter inability to express its intentions in grammatical English. We conclude upon this point that the prohibition is

exclusively confined to the Contingent Fund, and as the notes here sued on were not drawn on or made payable out of that fund they were not improperly issued.

Again: It is argued, that as the twenty-first subdivision of the section already referred to limits the interest to be paid on certain bonds therein authorized to be issued to twelve per cent., it is by implication a denial of the right to pay a higher rate upon any other character of indebtedness. The correct rule of interpretation, we think, authorizes an entirely different conclusion. The Legislature having limited the amount of interest to be paid on one peculiar character of paper authorized to be issued by the city, it must be presumed that upon all other kinds no limitation was intended. Such is certainly the rule generally adopted, and we see no reason why it should not apply here.

The judgment must be affirmed.