## CRONIN v. PATRICK COUNTY.[1]

### (Circuit Court, W. D. Virginia. September 27, 1882.)

1. COUNTIES—BONDS ISSUED UNDER MILITARY GOVERNMENT.

The military government of Virginia during 1867–69 was a de facto government, whose acts were authoritative in all matters of general administration; and hence the magistrates appointed by the military governor were competent to act for their counties in the matter of subscribing for railroad stock and issuing bonds in payment therefor.

2. SAME—ESTOPPEL.

When county bonds issued by the county's own agents contain nothing on their face showing that they were not to be issued except after forms and conditions of some sort had been complied with, and no steps have been taken by the county authorities to prevent an irregular issue of bonds, then the county is estopped from objecting to the regularity of the issue.

3. SAME—NEGOTIABILITY OF COUNTY BONDS.

A bond issued by a Virginia county in the form of a single bill, executed under seal, and made payable to an obligee and "assigns," is not a negotiable instrument, and a purchaser takes it subject to all equitable defenses.

4. SAME.

Where a county bond, not having the usual marks of negotiability, contains an annex in the form of a power of attorney to an agent to transfer the same, which form describes it as a "registered" bond, one who takes the bond is estopped from claiming that it is a negotiable instead of a registered bond, though by erasures and the filling up of blanks he converts the form into an assignment directly to himself.

5. PRACTICE—FILING OF PLEAS.

When justice requires it, the court will permit the filing of special pleas setting up defenses on the merits, when offered in good faith, even after the jury has heard all the evidence and the court has ruled upon prayers for instructions; especially will it do so in cases involving less than $5,000 in value and which are consequently not subject to review by the supreme court.

This was an action at law by T. C. Cronin against the county of Patrick, Va., to recover interest on two county bonds constituting part of an issue made by the county in payment of a subscription to the capital stock of the Norfolk & Great Western Railroad Company. There was a plea of non est factum, and a special plea setting up fraud and covin, and that plaintiff was not a bona fide holder. The case was tried to a jury, and the questions discussed in the opinion arose on prayers for instructions. The principal points raised for the defense were that the magistrates who ordered the vote of the people authorizing the issuance of the bonds were appointed by the military commandant of Virginia, and not magis-

---

[1] This case has been heretofore reported in 4 Hughes, 524, and is now published in this series, so as to include therein all circuit and district court cases elsewhere reported which have been inadvertently omitted from the Federal Reporter or the Federal Cases.

trates commissioned under state authority, and according to the state laws; that the issuance of the bond had not been ordered by a majority of the magistrates of the county; and that the bonds were nonnegotiable, and therefore subject to all equitable defenses in plaintiff's hands.   It appeared that a sufficient number of votes had been given in favor of the subscription, by the voters of the county, and that a quorum of the magistrates were present when the county court ordered the subscription; but that the order entered by the county court for the actual issuance of the bond, after the vote, was made when only three out of a total of some nineteen or more justices were present.   The bonds as issued were in the following form:

$1,000.                                     County of Patrick.

The county of Patrick, of the state of Virginia, hereby promises to pay to the Norfolk and Great Western Railroad Company, or its assigns, twenty years from the twenty-sixth day of October, 1868, the sum of one thousand dollars, for value received, with interest thereon at the rate of six per centum per annum from the twenty-sixth day of October, 1868, the future interest payable semiannually on the first day of May and the first day of November in each year. In testimony whereof the said county has caused its corporate seal to be hereto affixed, with the proper signature of the presiding justice, attested by the clerk, in accordance with the order of the county court of said county, the twenty-seventh day of August, 1869.

[County Seal.]                          Wm. Witt, Presiding Justice.
J. L. Anghlin, Clerk.

The following form of power of attorney was annexed to each bond on the same sheet, and signed by the president of the railroad company, to whom the bonds had been delivered by the county authorities:

For value received, the undersigned do hereby irrevocably constitute and appoint ——— attorney to sell, assign, and transfer unto ——— ——— dollars of the registered bonds of the county of ———, with power of substitution. Witness —— hand and seal this —— day of —— 18—.
                                        Thos. S. Flournoy, [Seal.]
Witnesses:                              Pres. N. & G. W. R. R. Co.
    Edwin De Leon.
    J. D. Imboden.

From the evidence it appeared that the bonds had been pledged by the railroad company with a New York banking house, from whom the plaintiff, who was their attorney, obtained the two bonds now sued upon; and that by filling up the blanks and making the necessary erasures he had changed the form of power of attorney so as to read as follows:

For value received, the undersigned do hereby sell, assign, and transfer unto Timothy C. Cronin one thousand dollars of the registered bonds of the county of Patrick. Witness —— hand and seal this —— day of —— 18—.
                                        Thos. S. Flournoy, [Seal.]
Witnesses:                              Pres. N. & G. W. R. R. Co.
    Edwin De Leon.
    J. D. Imboden.

There was some evidence tending to show that bonds in the foregoing form were by the custom of New York City negotiable instruments.

Diggs & Manson, for plaintiff.
Daniel, Lybrook & Moor, for defendant.

HUGHES, District Judge. I do not think the points relied upon by defendant in support of the plea of non est factum can be sustained. The military government of Virginia during the years 1867, 1868, and 1869 was a de facto government, whose acts have been recognized as authoritative in all matters of general administration ever since; and the magistrates appointed by Gen. Canby as commandant of the district were as competent to act for the counties in which they presided as their predecessors had been. Their acts must have been held to have been valid and authoritative.

As to the question whether less than a majority of those could bind the county by an order for the issuing of county bonds, I think the great preponderance of authority is to the effect that when a county's own agents execute bonds of the character of those sued upon here, and there is nothing on the face of the bonds showing that they were not to be issued except after forms and conditions of some sort had been complied with, and no steps had been taken by the authorities of the county itself to prevent or convict an irregular issue of its bonds, then the county is estopped from objecting to the regularity of the issue. The supreme court of the United States has gone very far in this direction, and the general preponderance of authority is in favor of such a ruling. Rock Creek Tp. v. Strong, 96 U. S. 271; San Antonio v. Mehaffy, Id. 312; Meyer v. City of Muscatine, 1 Wall. 385; Board of Com'rs v. Aspinwall, 21 How. 539; Moran v. Commissioners, 2 Black, 722; Redd v. Supervisors, 31 Grat. 695; and see authorities cited at the close of the last case. See, also, Bigelow, Estop. 266.

I proceed, therefore, to the principal question in this case, which is whether the bonds which are the subject of this suit are negotiable instruments, and, as such, good in the hands of a bona fide holder as against all equities which the obligor might have had against any prior holder. It is a bond under seal, in the ordinary form of the single bill, long used in Virginia. It is payable to the obligee or assignee, which latter is the old term used in bonds under seal. A host of authorities might be cited to show that the assignee of a chose in action in a court of law must bring the action in the name of the assignor for the benefit of himself, and that everything which might have been shown in defense against the assignor may be used against the assignee. Very many of the principal of these authorities are given in 1 Bouv. Law Dict. 151. See, also, Bebee v. Bank, 1 Johns. 529; Moore v. Holcombe, 3 Leigh, 597; Cary v. Bancroft, 14 Pick. 315. It is only by express statute that an assignee is authorized to sue in his own name in Virginia (Code 1873, c. 141, § 17), but he sues here subject to all the equities which the defendant may have had against the assignor before notice of the assignment. When there are no negotiable words in a bond, and it is not made payable to order or to bearer, but is made payable to assigns, the use of that word imports nonnegotiability, and is one of the distinguish-

89 F.—6

ing features of a bond intended to be nonnegotiable. In Virginia it is usual, in order to find the negotiable character of a bond or promissory note, to make it payable at a particular bank or place of business. No such place is named in the bonds under suit here, and they are payable, therefore, at the county of Patrick. Being dated in Virginia, executed in Virginia, and payable in Virginia, they can have no other character or attribute than is given to them by the laws of Virginia; and they cannot, therefore, be affected by any custom obtaining in New York. Had they been made payable in New York, then a custom of New York might have affected them; it cannot otherwise. There are two classes of public bonds known to the stock markets, essentially distinct in character, and intended to be so. They are negotiable bonds and registered bonds. Those of the first class—the negotiable bonds—are made payable to some payee or his order, in which case they are transferable by indorsement and delivery; or they are made payable to a payee or bearer or simply to bearer, in which case they are transferable by mere delivery. The other class—the registered bonds—are made payable to an obligee or his assigns, and they are only transferable by regular assignment on books of the obligor. The bonds of Patrick county, now under suit, are in the familiar form of the single bill, are executed under seal, and made payable to an obligee and "assigns." Although they are nonnegotiable, there is nothing on the face of the bonds proper to indicate that they were put out as registered bonds, and were intended by the county of Patrick to be transferred on books kept by the county for that purpose. But on the same sheet with each bond proper is an annex in the form of a power of attorney, signed by the president of the railroad company to which the bond is made payable, and to which it was delivered, describing these bonds as "registered bonds," and in each case containing a blank to be filled with the name of an attorney empowered to transfer the bond from the railroad company to an assignee. This paper indicates the intention of the original parties to the bond, and fixes its character to be a registered, as distinguished from a negotiable, bond. The plaintiff in this suit, in receiving the bond with this annexed paper, in the original form, received it as a "registered bond." It is true that he afterwards so erased words and filled up blanks as to have changed the character of the annexed paper from a power of attorney authorizing some agent to transfer the bond as a registered bond to himself into an assignment of the bond directly to himself, but this alteration could not obliterate the fact that the bond was originally issued as a registered bond. Independently, however, of this fact, the bond is nonnegotiable, and the plaintiff holds it either as a registered bond or as a bond which has come to him by mere assignment. In either event he holds it subject to all the equities to which it was subject in the hands of any prior holder; for, if it is a negotiable bond, no principle is more thoroughly settled than that expressed by Mr. Lewis in his work on Bonds and Stocks (page 158) that "perfect title to registered bonds can only be acquired by a transfer of them upon the books of the company" which issued them. In the leading case of Bank v. Laird, 2 Wheat. 390, it was held that no person could acquire a legal title to any shares of a bank except under a regular transfer, according to the rules of the bank; and if any person takes an assignment it must be subject

to the rights of the bank under the act of incorporation, of which he is bound to take notice. To the same effect was the ruling of the same court in Black v. Zacharie, 3 How. 483, and of the supreme court of Massachusetts in Fisher v. Bank, 5 Gray, 373. In the case of De Voss v. City of Richmond, 18 Grat. 338, the supreme court of appeals of Virginia made the same principle the basis of an important leading decision. It also declared the law as to bonds passing by mere assignment. It is to be observed that the bonds now in suit were not transferred by power of attorney for registration, but that the plaintiff, by erasures and interpolations in the powers of attorney attached to them, converted these powers into assignments. In respect to bonds so assigned the Virginia court of appeals, in the case of De Voss v. City of Richmond, said: "If the bonds had been made so as to pass by assignment merely, each successive assignee would have taken only an equitable title, and the bonds in his hands would have been subject to the same defenses to which they would have been subject in the hands of any prior holder." Indeed, this is elementary law. See the early cases of Sere v. Pitot, 6 Cranch, 332; Welch v. Mandeville, 1 Wheat. 233, 5 Wheat. 275; Spring v. Insurance Co., 8 Wheat. 269. As already remarked, modern cases to the same effect are too numerous to be cited. In the very recent case of Manufacturing Co. v. Bradley, 105 U. S. 175, the United States supreme court declared that a bond under seal of a corporation payable "to W. J. Gayer, Receiver," was not negotiable, and that the particular bond in contemplation was only made so by the company having indorsed upon it that for a consideration stated it would pay the bond "to bearer." In the case of De Voss v. City of Richmond the Virginia court of appeals, basing its decision on the principles that have been indicated, held that the holder of a registered bond before its transfer held it subject to all the equities which the obligor might have against any prior holder, and that these equities were not cut off until the original bond was taken in, and another bond issued in lieu of it to the last holder. It held that the issuing of the second bond did cut off all the equities which had attached to the first, and carried a clear legal title to the assignee receiving it. The bonds which are the subject of the present suit, whether regarded as registered bonds or as bonds which have passed by mere assignment, are held by the plaintiff subject to all the equities which subsisted between the county of Patrick and the Norfolk & Great Western Railroad Company, or the banking house in New York with which they were hypothecated. That nothing will operate to pass a title of shares of stock in incorporated companies but an actual transfer on the books of the company, see Adderly v. Storm, 6 Hill, 628; Rosevelt v. Brown, 11 N. Y. 148; Hale v. Walker, 31 Iowa, 344; Bank v. Case, 99 U. S. 628; Johnston v. Laflin, 103 U. S. 800. I must therefore deny all the prayers for instructions which have been presented by counsel on either side, and will sign instructions based on the principles I have indicated.

The defense then asked leave to file special pleas setting up with precision their grounds of defense on the merits. Counsel for plaintiff objected thereto, claiming that the request came too late, after the jury had heard the evidence, and the court had disposed of the prayers for

instructions. Counsel for plaintiff, however, stated that at a trial in the same court in a suit on other bonds of the same kind the judge who then was helding court refused to permit the filing of similar pleas at an earlier stage of the case, and for that reason counsel stated that they had gone to trial in this case on their general plea of non est factum and the plea charging fraud, etc.

HUGHES, District Judge. The pleas now offered go to the very merits of the case. They are offered in good faith, and not for the purpose of delay. The defendant is willing, if these pleas are admitted, to go on at once with the trial on the evidence already before the jury. To refuse permission to file these pleas would be a denial of justice.

There is another consideration which ought to weigh in this matter. The suit here is for the sum of about $2,000, and from the judgment of this court there is no appeal. Not only is this large sum dependent upon the unreviewable ruling of this court, but the present is avowed to be a tentative action, brought to test the liability of the defendant county for a large number of bonds outstanding, of which the two now in suit are a part. The pressure of business upon the supreme court of the United States is so great that congress has found it necessary to intrust final jurisdiction to the circuit courts of all suits involving values less than $5,000. This is a state of things quite anomalous in our country, and I think it incumbent upon these courts to allow liberal facilities of pleading in all cases where the good faith of the pleader is apparent, and where the result aimed at is to place the trial of causes on their very merits. I will allow the defendant to file the pleas which he has offered.

The plaintiff then moved for a continuance, which was granted as of right. No plea was offered raising the question of the jurisdiction of the federal court in the case, under the fifth clause of the first section of the judiciary act of 1875 (1 Supp. Rev. St. U. S. p. 174).