[No. 2042]

## THE FIRST NATIONAL BANK OF SAN FRANCISCO (A CORPORATION), RESPONDENT, *v.* NYE COUNTY (A CORPORATION), APPELLANT.

[145 Pac. 932]

1. STATUTES—SUBJECT AND TITLE.

The act of March 13, 1903 (Stats. 1903, c. 78), secs. 6, 7 (Rev. Laws, secs. 3831, 3832), authorizing county commissioners, in case of great necessity or emergency, to make a temporary loan, and requiring them at the next tax levy to make a levy for its payment, does not, in violation of Const. art. 14, sec. 17, relate to a subject not embraced in the title, "An act relating to county government and the reduction of the rate of county taxation."

2. COUNTIES—COMMISSIONERS—POWERS—NEGOTIABLE NOTES.

County commissioners cannot issue negotiable notes unless power is given expressly or by clear implication.

3. COUNTIES—COMMISSIONERS—POWERS—NEGOTIABLE NOTES.

Under the act of March 13, 1903 (Stats. 1903, c. 78), secs. 6, 7 (Rev. Laws, secs. 3831, 3832), authorizing county commissioners, in case of great necessity or emergency, to make a temporary loan, and requiring them at the next tax levy to levy an extra tax to pay it, no power to execute a negotiable note to secure the payment can be implied.

4. COUNTIES — COMMISSIONERS — POWERS — NEGOTIABLE NOTES — "STRICTLY NECESSARY."

Giving negotiable notes for temporary loans made by county commissioners in case of great necessity or emergency, to be paid for from the next tax levy, under authority of the act of March 13, 1903 (Stats. 1903, c. 78), secs. 6, 7 (Rev. Laws, secs. 3831, 3832), is not within the act of March 8, 1865 (Stats. 1864–65, c. 80), sec. 8, subd. 13, empowering county commissioners to do things "strictly necessary" to the full discharge of their powers.

5. COUNTIES—LOANS BY COMMISSIONERS—ESTOPPEL.

A county having had the benefit of money obtained by county commissioners on a temporary loan under the act of March 13, 1903 (Stats. 1903, c. 78), sec. 6, is estopped to assert that there did not exist a case of great necessity or emergency authorizing the commissioners making the loan.

6. COUNTIES—CLAIMS—PRESENTATIONS FOR ALLOWANCE—NOTES OF COMMISSIONERS.

The orders of county commissioners authorizing issuance of notes, and their subsequent issuance thereof, constitute them approved liquidated demands against the county, which therefore need not be presented to the board for allowance before action thereon, and this though they be not negotiable.

7. COUNTIES—NOTES OF COUNTY COMMISSIONERS—NEGOTIABILITY.

County commissioners having no power to issue negotiable notes, notes issued by them will be regarded as non-negotiable.

8. BILLS AND NOTES—NON-NEGOTIABLE—ACTION BY ASSIGNEE— DEFENSES AND SET-OFF.

By express provision of the civil practice act, sec. 46, action on a non-negotiable note by its assignee is subject to any set-off or defense existing at the time of or "before notice of" the assignment.

9. BANKS AND BANKING—INSOLVENCY—SET-OFF OF DEPOSIT AGAINST NOTE.

No demand is necessary for a deposit in an insolvent bank in order to set it off against a note of the depositor in the hands of the receiver.

10. BILLS AND NOTES—ACTION BY ASSIGNEE—NECESSARY PARTIES.

In an action against a county on its note, given a bank, by the assignee thereof, neither the receiver of the bank nor its preferred creditors are necessary parties; any questions of preference being for the receivership matter.

APPEAL from the Fifth Judicial District Court, Nye County; *John S. Orr*, Judge, presiding.

Action by the First National Bank of San Francisco against Nye County. Judgment for plaintiff, and defendant appeals. **Reversed,** with directions.

## STATEMENT OF FACTS

This action is one to recover on four distinct causes of action, three of which are based upon three promissory notes executed by the county commissioners of Nye County to the Nye and Ormsby County Bank, dated respectively October 2, 1907, October 15, 1907, and April 8, 1908. The fourth cause of action is for the amount of the aggregate of the three notes upon the theory of money had and received.

The demurrer of the defendant to the amended complaint having been overruled, the defendant answered, and to the answer of defendant the plaintiff demurred, and made a motion to strike, the demurrer and motion to strike reaching every allegation and defense in the answer. The demurrer was sustained, and the motion to strike granted. The defendant declined to amend its answer, and a judgment was given for the plaintiff, from which judgment appeal is taken to this court.

The facts, therefore, must be taken from the allegations of the answer. It therefore appears that on September 5, 1907, the board of county commissioners of the defendant, Nye County, adopted a resolution purporting to authorize the negotiation of an emergency loan, which resolution was thereafter approved by the state board of revenue on the 23d day of September, 1907, and the resolution of the state board of revenue was, on the 25th day of September, 1907, recorded in the minutes of the board of county commissioners of Nye County. Assuming to act under and by virtue of the authority of said resolution, the county commissioners of Nye County executed, on the 2d day of October, 1907, on the 15th day of October, 1907, and on the 8th day of April, 1908,

three promissory notes in respectively the sums of $2,514.95, $10,000, and $10,000, each of these notes bearing interest at the rate of 12 per cent per annum from the date thereof until paid, and being payable, under the terms thereof, on December 31, 1908, and also providing for attorney's fees in the event of suit. The notes all being in the same form, except as to date and amount, a copy of one only will be set out. It reads:

"Whereas, on the 5th day of September, A. D. 1907, the board of county commissioners of Nye County passed and entered upon their minutes a resolution indorsed by the respective members of that board to the effect that a loan be negotiated in the sum of forty thousand dollars in order to conduct the affairs of Nye County; and

"Whereas, the said resolution was forwarded to the honorable state board of revenue; and

"Whereas, that body, consisting of the Honorable John Sparks, as Governor, J. F. Eggers, as Comptroller, and the Honorable R. C. Stoddard, as Attorney-General, duly authorized the said board of county commissioners of Nye County in accordance with law to negotiate said emergency loan:

"Now, therefore, the said board of county commissioners, consisting of W. T. Cuddy, as chairman, and S. F. Lindsay and J. J. McQuillan, in order to carry out the provisions of said resolution as passed on September 5th, do hereby enter into this promissory note binding the credit of Nye County for the payment thereof:

"Tonopah, Nevada, October 2, 1907.

"On or before December 31, 1908, without grace, the county of Nye, in the State of Nevada, promises to pay to the Nye & Ormsby County Bank, or order at its banking office in Tonopah, Nye County, Nevada, the sum of two thousand five hundred and fourteen ($2,514.95) dollars and ninety-five cents, in gold coin of the United States, with interest at the rate of twelve (12%) per cent per annum from date until paid, for value received, and in case of suit or action being instituted to collect this note, or any portion thereof, the said county promises to pay

such additional sum as the court may adjudge reasonable as attorney's fees in the said suit or action.

                    "[Signed]  W. T. Cuddy,
                        "Jas. J. McQuillan,
                        "S. F. Lindsay,
"County Commissioners of Nye County, Acting in and
    for said County, Binding the Said County for the
    Payment of the Above Note."

Some time prior to December 31, 1908, the Nye and Ormsby County Bank assigned these notes to the First National Bank of San Francisco, the plaintiff in the action. The notes were never presented to the board of county commissioners for allowance and approval either within six months, or at any time thereafter.

It also affirmatively appears from the pleadings of the case that the note of April 8, 1908, was executed pursuant to said resolution of the 5th day of September, 1907, and after the first Monday in March, 1908, the time for the first tax levy following the passage of the emergency resolution.

It further appears from the answer that for a long time prior to the 23d day of February, 1909, the Nye and Ormsby County Bank was a designated depositary of Nye County, and that the county treasurer had, at divers and sundry times during the period intervening, placed on special deposit for safekeeping, and as a trust, with the Nye and Ormsby County Bank at its branch office at Tonopah, upon open account for the use and benefit of the defendant, a balance aggregating the sum of $66,686.36; that the Nye and Ormsby County Bank became insolvent, and finally closed its doors upon the 23d day of February, 1909, at which time it had upon deposit of the moneys of Nye County aforesaid said sum of $66.686.36; that no part of that amount has ever been paid to the county by the Nye and Ormsby County Bank; that the defendant never had any notice or knowledge of the assignment of the so-called promissory notes or indebtedness from the Nye and Ormsby County Bank to the plaintiff; and that the plaintiff failed and neglected

to apprise the defendant, Nye County, of the transfer of said notes, or the amount due thereon, until long subsequent to the maturity thereof, and a long time subsequent to the 23d day of February, 1909, after the Nye and Ormsby County Bank had closed its doors and ceased business. ˙

It is further alleged in the answer that at the time of the transfer and indorsement of the promissory notes set forth and of the transfer of all the causes of action set forth in plaintiff's complaint, by the Nye and Ormsby County Bank, the said Nye and Ormsby County Bank was insolvent and unable to pay the plaintiff, or any of its depositors or other creditors, and that the plaintiff in this action well knew the same.

It is further alleged that on the 31st day of December, 1908, this defendant had on deposit with the Nye and Ormsby County Bank ample funds with which to liquidate and pay the notes, together with the interest thereon, having on deposit $77,753.79, which sum included the $22,703.09, the emergency tax fund, which had been levied and collected against the taxable property of Nye County for the express purpose of paying the indebtedness set forth in the plaintiff's complaint, all of which the plaintiff well knew and was fully advised; that the amount of said emergency tax fund on deposit with the Nye and Ormsby County Bank on the 31st day of December, 1908, and thereafter and up to the 23d day of February, 1909, the date of the closing of said Nye and Ormsby County Bank, was ample and sufficient to settle the emergency indebtedness and pay the so-called notes and obligations held by the plaintiff; that the demands of plaintiff are counterclaimed by the deposit aforesaid, and thereby amply paid and compensated.

It further appears that the defendant had no notice at any time prior to March, 1909, of the transfer of the so-called promissory notes from the Nye and Ormsby County Bank to the plaintiff in this action, and that, on the contrary, they were given to understand and were informed by the officers of the Nye and Ormsby County Bank that no transfer of any kind had ever been made of

the said notes, and that this defendant relied upon such information; that at the time of the transfer of said notes from the Nye and Ormsby County Bank to the plaintiff the Nye and Ormsby County Bank was insolvent, and that plaintiff had knowledge and notice of its insolvency, and that these notes, and other notes and collateral in the hands of the Nye and Ormsby County Bank, were transferred to the plaintiff as collateral security for preexisting indebtedness due plaintiff from the Nye and Ormsby County Bank, and that the plaintiff in this case knew, and had knowledge, that the Nye and Ormsby County Bank was a depositary of the public funds of defendant, Nye County, and in constant receipt of money from the defendant.

It is further alleged in the answer that the plaintiff, in connection with the Nye and Ormsby County Bank, and with its officers, and well knowing the insolvency of said bank, conspired and contrived to obtain an undue advantage and preference over other creditors and depositors of the bank, and particularly to the wrong and injury of the defendant, and did obtain an unlawful preference in the payments of its obligation from the Nye and Ormsby County Bank to the wrong and injury of this defendant.

It is further alleged in the answer, as a defense, that the First National Bank of San Francisco obtained an unlawful preference over this defendant in having transferred to it, not only the notes of Nye County, but other collateral securities and negotiable commercial paper, all of which were transferred, according to the allegations of the answer, as security for preexisting indebtedness due and payable from the Nye and Ormsby County Bank to the plaintiff; that the preexisting indebtedness due from the Nye and Ormsby County Bank to the plaintiff consisted of two negotiable promissory notes dated March 6, 1908, made and executed by the Nye and Ormsby County Bank to the plaintiff in the sum of $50,000, with interest at 6 per cent per annum, and a further promissory note bearing date of December 28, 1907, made and executed by the Nye and Ormsby County Bank to the

plaintiff for the principal sum of $100,000, with interest at the rate of 7 per cent per annum from date until paid; that each of said loans were made long prior to the transfer of the notes mentioned in the complaint and the other negotiable and commercial paper thereafter transferred to the plaintiff; that each of said notes, upon the respective dates of issuance and execution and delivery, were respectively indorsed by Frank Golden, and at said times said Frank Golden, as said indorser, did by said indorsement waive presentation thereof to the maker, demand, protest, and notice of nonpayment, and did guarantee the payment of the same; that at the time of making said indorsements and personal guarantee of each of said promissory notes Frank Golden was, and at all times thereafter, until the closing of said institution on the 23d day of February, 1909, the president and a director of the Nye and Ormsby County Bank; that said preference was unlawful, illegal, and void.

As a further defense the answer alleges that between the 1st day of January, 1907, and the 23d day of March, 1909, R. F. Gilbert was the duly elected treasurer of Nye County, and that at all times and dates between the 1st of August, 1907, and February 23, 1909, the Nye and Ormsby County Bank was the duly designated and appointed depositary of the funds of Nye County, especially those coming into the custody and control of the treasurer; that the First National Bank of San Francisco, the plaintiff herein, was at all times between January 1, 1908, and February 23, 1909, fully informed and acquainted with the relation that existed between the Nye and Ormsby County Bank and the defendant, Nye County, and knew that the Nye and Ormsby County Bank was a depositary of funds and moneys of said Nye County, particularly the funds of the county coming into the hands of the treasurer, Mr. Gilbert; that at the times and dates mentioned in the plaintiff's complaint, and under and pursuant to the authority of section 6 of an act of the legislature entitled "An

act relating to county government and the reduction of the rate of county taxation," approved March 13, 1903, Nye County negotiated an emergency loan from the Nye and Ormsby County Bank at Tonopah, in the sum of $22,514.95, and issued as evidence thereof the alleged promissory notes specifically set out in plaintiff's complaint; that at the first tax levy thereafter, and for the purpose of paying off said loan, and in compliance with section 7 of said act, the defendant, Nye County, levied and collected an emergency tax upon the property in Nye County sufficient to pay said emergency loan; that said loan was due and payable according to the terms thereof, upon December 31, 1908, at the banking office of the Nye and Ormsby County Bank at Tonopah, Nevada; that on the day of maturity the defendant, Nye County, had on deposit with the Nye and Ormsby County Bank, at its Tonopah office and branch, $79,753.79, which sum included the emergency tax which had been levied for the purpose of paying said emergency loan; that on January 5, 1909, Nye County, by and through its county auditor, after a demand for payment by the Nye and Ormsby County Bank had been made, presented, offered, and tendered to the Nye and Ormsby County Bank at Tonopah, a check on said Nye and Ormsby County Bank, and upon the deposit of Nye County therein, and drawn against said emergency fund in the sum of $22,703.09, in payment of said loan, principal, and interest; that the Nye and Ormsby County Bank informed the auditor of this defendant that the alleged notes were in the branch office at Carson City, and that they would send and get them; that said notes were never presented, nor was any claim or demand ever made for the same until long thereafter, and after the failure and closing of the Nye and Ormsby County Bank, when, upon demand for payment being made by the plaintiff, defendant, Nye County, learned that plaintiff was the holder thereof; that the Nye and Ormsby County Bank, being insolvent, closed its doors on February 23, 1909, and was insolvent on the 31st day of December, 1908; that on February 23,

1909, the date of the closing of said Nye and Ormsby County Bank, this defendant had on deposit the sum of $66,689.36, which included the emergency fund amounting to $23,917.91 which had been levied and collected for the purpose of paying said loan; that at all times between December 31, 1908, and February 23, 1909, defendant, Nye County, had on deposit with the Nye and Ormsby County Bank more than $60,000, and had on deposit with the Nye and Ormsby County Bank the emergency fund, and was ready and anxious and willing to pay up said loan; that Nye County relied upon and believed the representations of the Nye and Ormsby County Bank and its officers that they were the owners and holders of the notes, and were lulled into a sense of security by the nonpresentation of said notes, and by the neglect and negligence of the plaintiff to present the same for payment, and, having no knowledge of the transfer thereof to plaintiff, or of the insolvency of the Nye and Ormsby County Bank, made no attempt to withdraw its deposits from the Nye and Ormsby County Bank, but, on the contrary, relying upon its absolute solvency continued to make said Nye and Ormsby County Bank a depositary of county funds, and between December 31, 1908, and February 23, 1909, deposited funds of Nye County to the extent of $32,759.15; that the plaintiff, during all of these times, was a large creditor of the Nye and Ormsby County Bank, and, having full knowledge of the relations existing between the Nye and Ormsby County Bank and the defendant, contrived and conspired, purposely and wilfully, with the Nye and Ormsby County Bank and its officers, and for the purpose of deceiving and defrauding and damaging the defendant, to withhold the presentation of said notes and notification to defendant that it was the owner and holder thereof, in the hope and expectation that, by reason and virtue of the large deposits continuously being made by the defendant, Nye County, in the defunct Nye and Ormsby County Bank, the said Nye and Ormsby County Bank could continue and remain open for a

considerable period of time, and could make payments, in part at least, upon its obligations to the First National Bank of San Francisco; that pursuant to the failure, neglect, and negligence of the plaintiff to present said notes for payment at maturity, and by reason of the wrongful acts of plaintiff in withholding the presentation thereof, and withholding notice that it was the owner and holder of the alleged notes, the emergency fund collected for the purpose of paying said emergency loan, together with the balance of defendant's deposit in the Nye and Ormsby County Bank, was forever lost to this defendant, by reason of which this defendant was damaged in the sum of $66,689.36.

The answer also alleges that the various county governments and counties are preferred creditors against all banking institutions; that Esmeralda and Ormsby Counties also lost money in the Nye and Ormsby County Bank; and that they should therefore be made parties to the action.

*Geo. B. Thatcher* and *P. M. Bowler,* for Appellant.

*H. R. Cooke,* for Respondent.

By the Court, NORCROSS J., after stating the facts:

[1] The notes sued upon in this case were issued under and by virtue of the provisions of sections 6 and 7 of an act entitled "An act relating to county government and the reduction of the rate of county taxation," approved March 13, 1903 (Rev. Laws, secs. 3831, 3832), which read:

"SEC. 6.    In case of great necessity or emergency, the board of commissioners by unanimous vote, by resolution reciting the character of such necessity or emergency, may authorize a temporary loan for the purpose of meeting such necessity or emergency, but such resolution shall not take effect until it has been approved by resolution adopted by a majority of the state board of revenue, and the resolution of the state board of revenue shall also be recorded in the minutes of the county commissioners.

"SEC. 7.   It shall be the duty of the commissioners at the first tax levy following the creation of such emergency indebtedness to levy an extra tax sufficient to pay the same, which shall be designated 'emergency tax.' "

It is contended that boards of county commissioners are not empowered to issue negotiable promissory notes under the provisions of section 6, and, further, that sections 6 and 7 are unconstitutional and void, because relating to a subject not embraced in the title of the act, in violation of section 17, art. 4, of the constitution.

The sections in question, we think, are not within the constitutional inhibition.   The act provides for a gradual reduction of the tax rate in the several counties of the state until a certain prescribed rate is reached, which should thereafter be the maximum rate.   Boards of commissioners are required annually, prior to the first Monday in March, to make a budget of the amount estimated to be required to meet the expenses of conducting the public business of the county for the next ensuing year. Such boards are prohibited from allowing or contracting for any expenditure unless the money for the payment thereof is in the treasury and especially set aside for such payment.   A violation of this provision subjects the commissioners to removal from office.   Recognizing that unforeseen necessities or emergencies might arise requiring the expenditure of additional money not provided for in the general tax levy, sections 6 and 7 were inserted in the act to make provision for meeting such necessities or emergencies.   These provisions are therefore in harmony with the general purposes of the act.

[2-3]   We think the language of sections 6 and 7, *supra*, will not ·justify a construction implying a power in the board of county commissioners to execute a negotiable promissory note as security for money borrowed under the provisions of said section 6.   It will be noted that there is no express authority for the execution of any negotiable instrument as security for the money borrowed. It has been repeatedly decided by this court that boards of county commissioners are of special and limited jurisdiction, and that authority to do any act must have specific

statutory provision therefor, or must be clearly implied from other language contained in the statute. The loan authorized under the provisions of the section in question is specified to be "temporary" in character. A tax is required to be levied at the next annual tax levy to meet the same; hence the duration of the indebtedness is only contemplated to be a year or less. The special emergency tax required to be levied under the provisions of section 7 provides a certain and sure method of extinguishing the debt at the earliest possible date. The shortness of the duration of the loan and the special tax to secure its liquidation negative an intent upon the part of the legislature to authorize the issuance of a negotiable instrument. The security provided for the repayment of the sum borrowed is ample and absolute, and it cannot be assumed that a negotiable instrument is manifestly necessary to secure the payment of such a debt. It is a well-established general rule, supported by numerous authorities, that boards of county commissioners are without power to issue negotiable bonds or notes, except by virtue of express provision of statute or where the language of the statute is such that the right to issue negotiable instruments is clearly implied. For example, it has been held that, where a board of county commissioners has been empowered to issue bonds payable a long time in the future, without express provision that such bonds should be negotiable in form, the right to issue the same in form negotiable was implied. (*Ashley* v. *Board*, 60 Fed. 55, 67, 8 C. C. A. 455.)

Judge Thayer, speaking for the Circuit Court of Appeals, Eighth Circuit, in *Ashuelot National Bank* v. *School District*, 56 Fed. 197, 199, 5 C. C. A. 468, 470, said:

"It is unnecessary for us to assert that the decision last referred to (*Brenham* v. *Bank*, 144 U. S. 173, 12 Sup. Ct. 559, 36 L. Ed. 390) goes to the full extent last indicated of holding that a municipal corporation can only acquire authority to issue negotiable securities by a statute which confers such power in express language, and that the power will not be implied under any circumstances. We think, however, that we may fairly affirm that the two

authorities heretofore cited do establish the following propositions: First, that an express power conferred upon a municipal corporation to borrow money for corporate purposes does not in itself carry with it an authority to issue negotiable securities; second, that the latter power will never be implied in favor of a municipal corporation, unless such implication is necessary to prevent some express corporate power from becoming utterly nugatory; and, third, that in every case where a doubt arises as to the right of a municipal corporation to execute negotiable securities the doubt should be resolved against the existence of any such right."

In *Coffin* v. *Board of Commissioners*, 57 Fed. 137, 140, 6 C. C. A. 288, 292, Judge Thayer, speaking for the same court, also said:

"Finally it is proper to call attention to the rule of law which requires the authority of a municipal corporation to issue negotiable paper to be clearly made out and established whenever the existence of such a power is called in question. A power of that nature will not be deduced from uncertain inferences, and can only be conferred by language which leaves no reasonable doubt of an intention to confer it."

Also, 11 Cyc. 551, says:

"Express authority is not in all cases required for the issuance of negotiable paper, but may be implied from other express powers granted. There is, however, no room for any implication of such power where a statute makes other specific provision for the payment of indebtedness, as by taxation, etc., or by warrant on the treasurer for money payable out of a designated fund or any money in the treasury not otherwise appropriated."

See, also, *County of Hardin* v. *McFarlan*, 82 Ill. 138; *Claiborne Co.* v. *Brooks*, 111 U. S. 400, 411, 4 Sup. Ct. 489, 28 L. Ed. 470; *Brenham* v. *Bank*, 144 U. S. 173, 12 Sup. Ct. 559, 36 L. Ed. 390; *Gause* v. *City of Clarksville*, 5 Dill. 165, Fed. Cas. No. 5,276; notes, 30 Am. Dec. 193, and 51 Am. St. Rep. 830.

It is urged by counsel for respondent that this court, in the case of *Douglass* v. *Virginia City*, 5 Nev. 149, sustained the view that a municipal corporation, unless in some way restricted by its charter, could enter into any contract necessary to enable it to carry out the powers conferred upon it—execute and deliver negotiable promissory notes in discharge of its legitimate powers—and that such decision is an authoritative declaration of this court directly in point in this case. The suit involved in the Virginia City case was upon a promissory note negotiable in form, but the question of the power of the municipal authorities to issue a negotiable instrument does not appear to have been raised in that case or specifically considered by the court. All the objections urged against a recovery in that case would have applied with equal force if the notes sued upon had been non-negotiable. The only authority cited in the decision was that of *Ketchum* v. *City of Buffalo*, 14 N. Y. 356. This latter decision sustained the power of a municipal corporation to issue a negotiable instrument in order to carry out certain express powers conferred by the city charter. But this court, in considering the Virginia City case, made no reference to this part of the decision in the Buffalo case.

When the case of *Douglass* v. *Virginia City* was before this court, there were comparatively few authorities available upon the question of the power of counties and municipal corporations, in the absence of express authority, to issue negotiable instruments. The question had not then received the consideration which courts and text-writers have subsequently devoted to it. It would also appear from the authorities that a more strict rule prevails in reference to the exercise of such a power by county authorities than in the case of strictly municipal corporations.

In the case of *Gause* v. *City of Clarksville*, 5 Dill. 165, Fed. Cas. No, 5,276 (decided in 1879, ten years later than the *Douglass* v. *Virginia City* case), Judge Dillon,

speaking for the Circuit Court of the United States, said:

"We are aware that the American courts, as to private corporations organized for pecuniary profit, have very generally held a different doctrine, and affirmed their implied or incidental power to make commercial paper. (Dillon on Municipal Corporations, secs. 81, 82, 407, and cases cited.) But the powers of private corporations in this regard are not here material. The American judgments which have affirmed the like power in municipal corporations have done so upon this course of reasoning: The corporation, they argue, has power to contract a debt, and it is assumed to be incident to that power to give a note or bill or bond in payment of it. Thus, in *Kelley* v. *Brooklyn*, 4 Hill (N. Y.) 263, Cowen, J., makes the basis of the judgment the erroneous proposition that, independent of any statute provision, all corporations, private and municipal, may issue negotiable paper for a debt contracted in the course of its business; and other courts have, without examination, adopted this mistaken view of the law. (*Galena* v. *Corwith*, 48 Ill. 423, 95 Am. Dec. 557; *Clarke* v. *School District*, 3 R. I 199; *Sheffield* v. *Andress*, 56 Ind. 157; *Tucker* v. *Raleigh*, 75 N. C. 267; *Ketchum* v. *Buffalo*, 14 N. Y. 356; *Douglass* v. *Virginia City*, 5 Nev. 147; *Sturtevants* v. *Alton*, 3 McLean, 393, Fed. Cas. No. 13,580.) It sufficiently appears from the foregoing that it is a mistake to affirm that the power to issue negotiable paper necessarily or legally results from the corporate power to create debts."

The decision in the case of *Galena* v. *Corwith*, 48 Ill. 423, 95 Am. Dec. 557, cited *supra* by Judge Dillon, was subsequently materially restricted, if not entirely overruled, in *Hardin* v. *McFarlan*, 82 Ill. 138, and in *Commissioners* v. *Newell*, 80 Ill. 587.

We would not, we think, be warranted in sustaining the judgment in this case upon the authority of *Douglass* v. *Virginia City*, for the reasons stated.

[4] It is contended by counsel for appellant that subdivision 13 of section 8 of an act entitled "An act to

create a board of county commissioners in the several counties of this state, and to define their duties and powers," approved March 8, 1865 (Stats. 1864–65, c. 80), is applicable to section 6, *supra*, of the act of 1903. The subdivision in question reads as follows:

"To do and perform all such other acts and things as may be lawful and strictly necessary to the full discharge of the powers and jurisdiction conferred on the board." (Rev. Laws, sec. 1508.)

We think this subdivision is only applicable to the section of which it constitutes a part, but, even if it could be said to be applicable to section 6, *supra*, of the act of 1893, it cannot be said, we think, that the issuance of negotiable .promissory notes is strictly necessary to the full discharge of the powers prescribed in said section 6.

[5] It is next contended by counsel for appellant that the notes sued upon were issued without authority of law, for the reason that the recitals contained in the resolution adopted by the board of county commissioners of Nye County, and purporting to state the facts constituting a great necessity or emergency, were insufficient to authorize the negotiation of the loan for the payment of which the notes were issued. It is admitted that the county received the money represented by the principal of the several notes sued upon, used the same in the business of the county, and levied and collected a tax for the payment of the same. While at the time the county was negotiating the loan in question any taxpayer of Nye County might by appropriate proceedings have tested the question whether the alleged emergency or necessity, as set forth in the resolution of the board of county commissioners, was strictly an emergency or necessity contemplated by the law, the county itself will not be heard to question the sufficiency of its own resolution for the purpose of defeating the payment of the loan which it has secured and the money from which the county has received the benefit of. The resolution adopted by the county commissioners also met with the approval of the state board

of revenue, the two bodies empowered by the statute to determine the question, and the county is estopped from questioning the regularity of its own proceedings when it has received all the benefit of the money paid to it by virtue of such loan. (*Orleans* v. *Platt*, 99 U. S. 677, 25 L. Ed. 404; *Gas Co.* v. *San Francisco*, 9 Cal. 453; *Illinois Co.* v. *Arkansas City*, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518; *Herring* v. *Modesto Irr. District*, 95 Fed. 705; *Cronin* v. *Patrick Co.*, 89 Fed. 79; *Argenti* v. *San Francisco*, 16 Cal. 258; *Chicago* v. *R. R. Co.*, 244 Ill. 220, 91 N. E. 422, 135 Am. St. Rep. 316; *Coffin* v. *Kearney Co.*, 57 Fed. 137, 6 C. C. A. 288; *Bissell* v. *Jeffersonville*, 24 How. 287, 16 L. Ed. 664; *Lynde* v. *County*, 16 Wall. 6, 21 L. Ed. 272; *Comrs.* v. *Bolles*, 94 U. S. 104, 24 L. Ed. 46; *Comrs.* v. *Clark*, 94 U. S. 278, 24 L. Ed. 59; *Board* v. *Randolph*, 89 Va. 614, 16 S. E. 722; *County* v. *Marcy*, 97 U. S. 96, 24 L. Ed. 977; *San Antonio* v. *Mehaffy*, 96 U. S. 312, 24 L. Ed. 816; *Evansville* v. *Dennet*, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760; 1 Dillon, Municipal Corporations, 4th ed. sec. 549.)

[6] The contention of appellant, that the complaint fails to state a cause of action because of the absence of an allegation that the notes sued upon were presented to the board of county commissioners for allowance prior to the institution of the action, is without merit. The orders of the board of county commissioners authorizing the issuance of the notes and their subsequent issuance by the board constitute the same approved liquidated demands against the county which do not require subsequent presentation before suit, in the event that they are not paid in accordance with their terms. The fact that the notes cannot be regarded as negotiable instruments will not affect their character as approved liquidated demands. (*Lincoln Co.* v. *Luning*, 133 U. S. 529, 10 Sup. Ct, 363, 33 L. Ed. 766; *Vincent* v. *Lincoln Co.*, 62 Fed. 705; *Lorsbach* v. *Lincoln Co.*, 94 Fed. 963; *Ayres* v. *Thurston Co.*, 63 Neb. 96, 88 N. W. 178; *Greene Co.* v. *Daniel*, 102 U. S. 191, 26 L. Ed. 99; *Parker* v. *Saratoga Co.*, 106 N. Y. 392, 13 N. E. 308; *Washoe Co.* v. *Humboldt Co.*, 14 Nev. 123; *State* v.

*Lander Co.*, 22 Nev. 71, 35 Pac. 300; 7 Am. & Eng. Ency. Law, 2d ed. 966; 11 Cyc. 587. )

[7–9] The board of commissioners of Nye County being without power to issue negotiable paper as security for the loan obtained from the Nye and Ormsby County Bank, the notes sued upon must be regarded as non--negotiable instruments; and viewing the notes as non-negotiable instruments, the question is presented whether the answer of defendant sets up a good defense to this character of security.

Section 46 of the civil practice act (Rev. Laws, sec. 4988) provides:

"In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense, existing at the time of, or before notice of, the assignment; but this section shall not apply to a negotiable promissory note, or bill of exchange, transferred in good faith, and upon good consideration, before due."

Under the provisions of this section, which is the only statute in this state bearing on the question, the defendant has the right to interpose against the plaintiff any defense which it might have against the Nye and Ormsby County Bank, were suit instituted by the latter corporation, which defense accrued prior to notice of the assignment. (*Elder* v. *Shaw*, 12 Nev. 82; *Haydon* v. *Nicoletti*, 18 Nev. 299, 3 Pac. 473; *Huntington* v. *Chittenden*, 155 N. Y. 401, 50 N. E. 49; *Scott* v. *Armstong*, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059.)

In the case of *Stadler* v. *Bank*, 22 Mont. 190, 56 Pac. 11, 74 Am. St. Rep. 588, it was held that, notwithstanding a statute like ours, *supra*, the holder of non-negotiable securities was only subject to such defenses as existed at the time of the transfer. This decision, however, is based on the language of another statute which only referred to defenses existing at the time of the transfer, and the latter statute was deemed controlling. Notwithstanding statutory provisions substantially the same as

were considered by the Montana court, the Supreme Court of California has so construed the two statutes together as to subject the assignee of a non-negotiable instrument to all defenses which the defendant might have against the assignor prior to notice of the assignment. (*McCabe* v. *Grey*, 20 Cal. 510; *Bank* v. *Gay*, 101 Cal. 286, 35 Pac. 876; *Haskins* v. *Jordan*, 123 Cal. 161, 55 Pac. 786.) See, also, to the same effect, *Martin* v. *Pillsbury*, 23 Minn. 175.

As before stated, the only statute in this state upon the question is the one quoted *supra*, and this leaves no room even for construction.

It is alleged in the answer that the defendant had no notice of the assignment until long after the Nye and Ormsby County Bank went into the hands of a receiver and shortly before the suit was instituted. It is alleged in the answer that the defendant had on deposit in the Nye and Ormsby County Bank on the day the notes, by their terms, became due and on the day the bank closed its doors, a sum of money much greater than the total amount of the notes with accrued interest; that the defendant offered to pay the notes at the time they became due, or within a few days thereafter. It is well settled that no demand is necessary for a deposit in an insolvent bank in order to set it off against a note in the hands of the receiver. (*Colton* v. *Drover*, 90 Md. 85, 45 Atl. 23, 46 L. R. A. 388, 78 Am. St. Rep. 431; *Thompson* v. *Trust Co.*, 130 Mich. 508, 90 N. W. 296, 97 Am. St. Rep. 494.)

On the day the Nye and Ormsby County Bank closed its doors and went into the hands of a receiver, the defendant was entitled to set off the amount of its deposit in the defunct bank *pro tanto*, not only against the receiver, but against any assignee of the bank holding the notes of the defendant county; such county having no notice of such assignment prior to the suspension of the bank.

[10] We think the court did not err in refusing to make the receiver of the Nye and Ormsby County Bank and

the counties of Ormsby and Esmeralda parties to the action. Questions presented in this answer, as a basis for bringing in additional parties, can all be presented in the receivership matter, and, we think, have no proper place in this action.

Many other questions have been discussed in the briefs which we deem unnecessary to determine.

The judgment and the order sustaining the demurrer to the answer are reversed, with directions to the court below to also modify its order to strike, if necessary, so as not to exclude allegations in support of defendant's alleged defense of set-off.

### ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.